**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| LOCKTON COMPANIES, LLC – PACIFIC SERIES, LOCKTON INVESTMENT ADVISORS, LLC, LOCKTON INVESTMENT SECURITIES, LLC f/k/a LOCKTON FINANCIAL ADVISORS, LLC, and LOCKTON PARTNERS, LLC, | ) ) ) ) ) ) ) | Case No. 4:22-cv-00791 |
| Plaintiffs, | ) ) | JURY TRIAL REQUESTED |
| vs. | ) ) | |
| SALLIE F. GIBLIN, | ) ) | |
| Defendant. | ) | |

## <u>COMPLAINT</u>

1.     Lockton files this lawsuit to stop Sallie Giblin, one of its owners and office Presidents, from flagrantly breaching her contractual and fiduciary obligations by diverting corporate clients and confidential and proprietary information to Alliant Insurance Services, Inc., a competing insurance brokerage and consulting service.  Until Tuesday morning of this week, Giblin was the President of Lockton's San Diego and Irvine offices and an owner in several Lockton entities.  But later that morning, Giblin abruptly resigned, refused to honor her required thirty-day notice period, and began working for Alliant.  Even more audaciously, in a manipulative effort to enable Giblin to violate her obligations to Lockton, on her way out the door, Giblin attempted to exploit baseless claims of unfair treatment and discrimination against Lockton, as leverage to obtain a release from her commitment not to solicit Lockton customers and other restrictions.

2.     While Giblin has attempted to blame her exit from Lockton, and related breaches

of contractual and fiduciary obligations to Lockton, on purported mistreatment by Lockton, in fact, her own misconduct precipitated her departure from Lockton. After joining Lockton, with Lockton's help and through its vast resources, Giblin quickly demonstrated her abilities as a Lockton owner and Producer Member and became very successful in a short period of time. Recognizing Giblin's potential as a leader in the organization, Lockton promoted Giblin to the position of President of its San Diego and Irvine Offices, overseeing the overall operation and development of business in those locations. Giblin recognized at the time that leadership in the insurance industry "isn't 'male dominated,' but rather 'predominately male,'" and that she was the only one who could craft her journey and path for success. However, over time Lockton grew concerned that Giblin was creating a toxic work environment for those under her leadership. Lockton conducted multiple investigations into her conduct based on a myriad of complaints, provided warnings and coaching regarding her behavior and treatment of Lockton's Producer Members, Associates, and employees, and retrained her on various leadership aspects to insure she was leading in accordance with Lockton's core values, which exemplify an inclusive and respectful work environment.

3.     Despite Lockton's investment into her success, Giblin began shopping for a new location to transition Lockton's business, directly misleading Lockton as to her intentions. When Lockton heard in the marketplace that she was looking to leave, Lockton approached Giblin and again offered its support. Lockton asked Giblin to be transparent regarding her intentions so that Lockton could help facilitate an orderly transition, should that become necessary. Giblin denied her intentions of leaving Lockton to join a competitor. Then, on November 29, 2022, she abruptly reversed course and announced that she intended to terminate her owner interests in Lockton immediately and join a competitor, despite knowing full well that her agreements with Lockton

required advance notice. Giblin must be held accountable to her obligations to Lockton and her unlawful conduct must cease.

## **NATURE OF THE ACTION**

4.    Plaintiffs Lockton Companies, LLC – Pacific Series (the "Series"), Lockton Investment Advisors, LLC ("LIA"), Lockton Investment Securities, LLC f/k/a Lockton Financial Advisors, LLC ("LIS"), and Lockton Partners, LLC ("Lockton Partners") (the Series, LIA, LIS, and Lockton Partners collectively referred to herein as "Plaintiffs" or "Lockton") bring this action to enforce Producer Member and Producer Partner Giblin's long-standing and enforceable agreements with Lockton, enforce her fiduciary duties to Lockton, and protect Plaintiffs' confidential information, trade secrets, and business relationships. In particular, Plaintiffs seek to enforce Giblin's contractual 30-day notice of termination requirement, non-disclosure obligations, non-solicitation obligations, and duty of loyalty, and to enjoin Giblin's ongoing violations of same.

5.    Giblin joined Lockton in 2006 following a decade in the employee benefits insurance brokerage industry. Giblin has been an owner and Producer Member of Lockton for over 16 years and a Producer Partner of Lockton Partners for over five years. During those 16 years, she developed a significant book of business using Lockton's Confidential Information, goodwill, and business development resources.

6.    Giblin is not and never was an employee of Lockton. She is an owner, Producer Member and Producer Partner of Lockton, and has reaped the benefits of said ownership for over 16 years. Any claim by Giblin to the contrary is merely a desperate attempt to avoid responsibility.

7.    Giblin's position as owner, Producer Member, and Producer Partner of Lockton entitles her to broad access to Lockton's most sensitive competitive information and to Lockton's customer accounts and personnel. With this access comes unconditional fiduciary duties of loyalty

3

and care that she owes Lockton.

8.      Giblin is also subject to contractual restrictive covenants as a Producer Member and Producer Partner.  In exchange for valuable equity interests in Lockton, Giblin became subject to Member Agreements containing provisions prohibiting the solicitation of Lockton colleagues and clients during her membership and for a two-year period following the termination of her membership.  When Giblin became a Producer Partner in 2017, in exchange for her partnership interest in Lockton Partners, her non-solicitation provisions were extended to a four-year period following the termination of her partnership. Giblin also agreed that she would not disclose Lockton's Confidential Information (defined below), an obligation with no expiration date.  Giblin further agreed that she would only terminate her membership in Lockton upon thirty (30) days' written notice to Lockton.

9.      On November 29, 2022, Giblin notified Lockton that she was terminating her membership, "[e]ffective immediately."   Giblin failed to provide 30 days' notice of her termination, as required by her agreements with Lockton.  Giblin also failed to disclose to Lockton that she had accepted an offer to join Lockton's direct competitor, Alliant Insurance Services, Inc. ("Alliant").

10.      After receiving Giblin's termination notice, Lockton promptly communicated to Giblin that it was invoking the 30-days' notice requirement and continuing contractual obligations and fiduciary duties and requested that Giblin confirm her intention to comply with the same. Giblin, however, has reiterated through her counsel that Giblin deems her termination effective immediately and believes the non-solicitation and notice provisions to which she is subject are not enforceable.  Lockton has also communicated with Alliant, informing Alliant of Giblin's notice period and other restrictions.

11. Giblin has blatantly violated her contractual and fiduciary duties to Lockton by attempting to effectuate the early termination of her membership and partnership in Lockton and starting work for Alliant while still a Lockton Producer Member and Producer Partner. In addition, on information and belief, Giblin has misappropriated Lockton's Confidential Information for use at Alliant with the intent to solicit, or attempt to solicit, Lockton colleagues and customers. Indeed, the very same day that Giblin was accessing her Lockton email account through which she transmitted notice of her resignation, she was simultaneously employed by Lockton's competitor, Alliant, and thus wearing two hats. Moreover, she failed to ensure all Lockton property and data were out of her possession prior to joining Alliant. Her dual access to competing information and technology systems, confidential information, and property of Lockton and Alliant, during a period of competing loyalties to both companies, was improper and indicative of misappropriation. Lockton's investigation is ongoing and is likely to uncover additional misconduct.

12. Immediately following her resignation, in a clearly tactical effort to gain leverage to compete against Lockton immediately in blatant violation of her agreements, Giblin began fabricating, through counsel, claims against Lockton regarding alleged mistreatment. These accusations are utterly false. Moreover, despite Giblin's efforts to deflect from her own misconduct, her accusations against Lockton in no way excuse her failure to comply with her continuing contractual and fiduciary obligations to Lockton.

13. Lockton seeks preliminary and permanent injunctive relief prohibiting Giblin from: (i) terminating her membership in Lockton before the expiration of the 30 days' notice period and working for Alliant, or another competitor, during that period; (ii) wrongfully soliciting, recruiting, or hiring Producer Members and associates/employees of Lockton, or from wrongfully aiding and/or abetting these activities, until December 29, 2026; (iii) soliciting, accepting, or servicing

5

Lockton's restricted customer accounts, or from wrongfully aiding and/or abetting these activities, until December 29, 2026; (iv) wrongfully disclosing, using, or taking Lockton's Confidential Information and trade secrets, including, but not limited to, information about Lockton's customer accounts, or from wrongfully aiding and/or abetting these activities; and (iv) interfering with Lockton's contracts and business expectancies, as further alleged herein. Lockton also seeks a declaration of the parties' rights and obligations under their agreements, and seeks to recover damages for those quantifiable injuries that Lockton has suffered to date. Lockton also reserves the right to seek expedited discovery in aid of the relief requested.

## THE PARTIES

14.     The Series is a series of Lockton Companies, LLC, (the "Company") a Missouri series limited liability company organized under the Missouri Limited Liability Company Act, Mo. Rev. Stat. §§ 347.010, *et seq.*, specifically Mo. Rev. Stat. § 347.186. The Series operates brokerage offices and transacts business in California (Irvine, Los Angeles, Sacramento, San Diego, San Francisco, San Jose and Sonoma), Washington, and Oregon, among other locations.

15.     LIA is a Missouri Limited Liability Company organized and operating under the laws of the State of Missouri. LIA operates an investment advisory service for its clients across the United States.

16.     LIS is a Missouri Limited Liability Company organized and operating under the laws of the State of Missouri. LIS operates Lockton's broker-dealer business.

17.     Lockton Partners is a Missouri Limited Liability Company organized and operating under the laws of the State of Missouri. Lockton Partners ultimately holds the operating interests in all Lockton entities that carry on insurance intermediary business on a global basis.

18.     Giblin, a citizen and resident of California, is a commercial insurance brokerage

professional, an owner and Producer Member of the Series, LIA, and LIS, and an owner and Producer Partner of Lockton Partners. She has been an owner and Producer Member of Lockton since 2006. She has been an owner and Producer Partner of Lockton Partners since 2017. She specializes in employee benefits.

## JURISDICTION AND VENUE

19.     This action arises under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*, as well as under Missouri law. The Court has subject-matter jurisdiction over Lockton's federal cause of action (Count IV) pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c). The Court has supplemental jurisdiction over the remaining causes of action (Counts I-III, V) pursuant to 28 U.S.C. § 1367.

20.     By signing and accepting the terms of her Member Agreements and Partner Agreement, not to mention accepting the benefits attendant thereto, Giblin expressly agreed with Lockton that jurisdiction is proper in this Court and she is therefore subject to the Court's jurisdiction.[1] *See* Exhibit A, § 7.7(a); Exhibit B, § 7.7(a); Exhibit C, § 7.7(a); Exhibit D, § 5.9(a). There is a reasonable basis for the parties' choice of forum given the negotiation of the Member Agreements in Missouri, Lockton's substantial contacts with Missouri and the motivation to resolve disputes regarding the parties' rights and interests in the agreements on a uniform basis in accordance with Missouri's series limited liability company law. *See* Exhibit A, § 7.7(b); Exhibit

---

[1] A true and accurate copy of Giblin's Member Agreement for the Pacific Series of Lockton Companies, LLC and each of its amendments (the "Series Member Agreement") is attached hereto as **Exhibit A** and incorporated herein by reference. A true and accurate copy of Giblin's Member Agreement for Lockton Investment Advisors, LLC and each of its amendments (the "LIA Member Agreement") is attached hereto as **Exhibit B** and incorporated herein by reference. A true and accurate copy of Giblin's Member Agreement for Lockton Investment Securities, LLC f/k/a Lockton Financial Advisors, LLC and each of its amendments (the "LIS Member Agreement") is attached hereto as **Exhibit C** and incorporated herein by reference. The Series Member Agreement, LIA Member Agreement, and LIS Member Agreement are collectively referred to herein as the "Member Agreements." A true and accurate copy of Giblin's Partner Agreement for Lockton Partners, LLC (the "Partner Agreement") is attached hereto as **Exhibit D** and incorporated herein by reference.

B, § 7.7(b); Exhibit C, § 7.7(b); Exhibit D, § 5.9(b). Additionally, the Series, LIA, and LIS, and thus Giblin as a Producer Member of each, receives administrative, regulatory/compliance, and customer-related support and information from Missouri, and utilizes computer servers located in Missouri.

21. This Court recently upheld the forum selection provision contained in the Member Agreement of another former Producer Member of the Series, also hired by Alliant, and found that a valid forum selection clause waives objections to personal jurisdiction. *See Lockton Companies, LLC – Pacific Series, et al. v. Kaufman*, Case No. 22-00462-CV-W-SRB, ECF No. 33.

22. Venue is proper in this Court because Giblin expressly agreed in writing that any action relating to her respective written agreements with Lockton must be brought exclusively in either state court in Jackson County, Missouri or in any Federal Court in Kansas City, Missouri. *See* Exhibit A, § 7.7(a); Exhibit B, § 7.7(b); Exhibit C, § 7.7(b); Exhibit D, §5.9(a). Venue is also proper as to Lockton's claims against Giblin because Lockton's contract-based claims against Giblin arise out of the same nucleus of operative facts as Lockton's other claims against Giblin. Therefore, judicial economy, fairness, and convenience require the claims be heard in one proceeding before this Court.

<u>**FACTUAL ALLEGATIONS**</u>

I.    **THE SERIES**

23. The Series, along with the other series of the Company and their affiliates, makes up one of the world's preeminent insurance brokerage firms, offering insurance, risk management, employee benefits, and retirement services, across a number of economic sectors, including real estate and construction, technology, telecommunications, healthcare, and financial services. The Series and its affiliates operate globally, through a number of affiliates.

24.     On May 1, 2016, the Company reorganized with the approval of the Series Producer Members, including Giblin. Each Producer Member of the Series entered into an individual member agreement with the Series and thereby agreed, along with all Producer Members of the other series, to be bound by the "Second Amended and Restated Operating Agreement of Lockton Companies, LLC and Each of its Series," dated May 1, 2016, which applies to the Company, all of its series, and all Producer Members.

25.     On January 1, 2018, the Company amended and restated its operating agreement to clarify minor ambiguities by executing the Third Amended and Restated Operating Agreement of Lockton Companies, LLC and Each of its Series (the "Series Operating Agreement"). Due to the nature of the amendment, approval of each Series Producer Member was not required. Each Producer Member of the Series, along with all Producer Members of the other series, are bound by the Series Operating Agreement, which applies to the Company, all of its series, and all Producer Members.

26.     The Producer Members of the Series each hold an ownership interest in the Series. Specifically, each Producer Member of each series makes a Capital Contribution (as defined in the Member Agreement) to and thereby purchases and owns one (1) Producer Unit of the respective series with which he or she is affiliated, which confers and represents the Producer Member's equity ownership interest and his or her respective series with which he or she is affiliated, and entitles the Producer Member to receive, among other benefits of ownership, producer profit return (profit distribution) from his or her series and a Buy-Sell Price upon termination of his or her membership.

27.     In addition to its organization as a Missouri series limited liability company, the Series has numerous connections to Missouri in its day-to-day operations. The Series has many

associates/employees and Producer Members who are licensed as insurance brokers in the State of Missouri. The Series and its Producer Members also pay entity and individual taxes and licensing fees to the State of Missouri.

## II. LIA

28. LIA operates an investment advisory service for its clients across the United States. In December 2021, LIA transferred certain of its assets to a third party pursuant to an asset purchase agreement. As part of that asset transfer, LIA Producer Members that opted to remain Producer Members of LIA were eligible to participate in the asset transfer and share in the proceeds, subject to enhancements to their then-current non-solicitation obligations to LIA.

29. As part of the asset transfer, each remaining LIA Producer Member (including Giblin) voted to approve the Fourth Amended and Restated Operating Agreement of Lockton Investment Advisors, LLC (the "LIA Operating Agreement" together with the Series Operating Agreement hereinafter referred to as the "Operating Agreements") and assented to the enhanced non-solicitation obligations documented in a written Solicitation agreement.

## III. LIS

30. LIS operates Lockton's broker-dealer business.

## IV. LOCKTON PARTNERS

31. Lockton Partners was formed under the Missouri Limited Liability Act, Mo. Rev. Stat. §§ 347.010, *et seq.*, and maintains its headquarters in Kansas City, Missouri.

32. Lockton Partners ultimately holds the operating interests in all Lockton entities that carry on insurance intermediary business on a global basis, including the Series.

33. A Producer Member becomes a Producer Partner solely by invitation from Lockton Partners for a demonstrated history of exceptional production results and performance as a

Producer Member that Lockton Partners determines is likely to continue.

34.     Giblin became a Producer Partner in 2017, entering into the Partner Agreement and agreeing in writing to be bound by the Lockton Partners Operating Agreement.

35.     Producer Partners, like Giblin, make an initial Capital Contribution (as defined in the Partner Agreement) and thereby acquire a Partner Unit consisting of an equity ownership interest in Lockton Partners.

36.     Producer Partners are entitled to a share of the value of Lockton Partners, denominated in the form of "Class B Shares" that annually are attributed to a Producer Partner's Partner Unit and measure the Producer Partner's share in the value of Lockton Partners as determined by a formula based on global consolidated EBITDA from Lockton's global operations.

37.     Producer Partners are also entitled to the opportunity for the value of the Partner Unit to increase significantly over time and thus realize a substantial capital gain from the future sale of the Partner Unit, the "Buy-Sell Price" (as defined in the Lockton Partners Operating Agreement).

38.     Producer Partners are entitled to the opportunity to derive significant tax benefits from their ownership and sale of their Partner Unit in Lockton Partners.

## V.     PRODUCER MEMBER GIBLIN

39.     Giblin is a commercial insurance brokerage professional and an owner, Producer Member, and Producer Partner of Lockton.  *See* Exhibit A; Exhibit B; Exhibit C; Exhibit D.

40.     In addition to her status as a Producer Member and Producer Partner of Lockton, Giblin serves as the President of Lockton's San Diego and Irvine offices.  She also served on the Pacific Series Executive Committee, which determines strategic direction for the Series and makes decisions concerning the budget and many aspects of the Series' operations.  In her capacity as a

Member of the Pacific Series Executive Committee, she was privy to critical Confidential Information of Lockton and its many Series.

41.     At all times during Giblin's association with Lockton, she has been and remains a sophisticated businesswoman with extensive experience in the business world, including, among other things, more than 26 years of experience and specialized training in the commercial insurance brokerage industry.

42.     By virtue of her longstanding relationship with Lockton, Giblin has developed a significant book of business.  She is responsible for strengthening and developing new Customer Accounts[2] as well as servicing existing Customer Accounts.  She is also entrusted to maintain significant and long-term relationships with customers' key decision-makers who possess the authority to choose, and switch, brokerage firms.  Giblin has also developed close relationships with various other Producer Members and Producer Partners, as well as with Lockton's employees.

43.     Over the last sixteen years, Lockton has invested significantly in client service teams and the resources used by Giblin to service Customer Accounts.

44.     Giblin has access to important Confidential Information [3] about Lockton's

_____

[2]  As defined by the Series Member Agreement, "Customer Accounts" means "the accounts of all customers of one or more of the Series, the Other Series, or any Affiliate" as well as "prospective customers of either one or more of the Series, the Other Series or any Affiliate," subject to certain conditions. *See* Exhibit A, § 4.1(c)(1)-(2).  The LIA Member Agreement, LIS Member Agreement and Producer Partner Agreement each contain a nearly identical definition. *See* Exhibit B, § 4.1(c)(1)-(2); Exhibit C, § 4.1(c)(1)-(2); Exhibit D, § 4.1(c)(1)-(2).

[3]  As defined by the Series Member Agreements, "Confidential Information" "includes, without limitation, trade secrets, non-public proprietary information, formulas, patterns, compilations, programs, devices, methods, techniques, or processes; sales and other business methods or policies; prices or price formulas; procedures; the identity of and information concerning former or current Customer Accounts of the Series, the Other Series and/or any Affiliate, including but not limited to Customer Account needs and preferences, levels of satisfaction and the terms of engagement and transactions between the Series, the Other Series or Affiliates and/or its or their Customer Accounts; revenues, expenses, budgeting, finances and other financial information; computer systems, programs and software . . .; business, marketing and development strategies and plans; Series; Other Series and Affiliate member and/or Lockton Entity personnel information, including without limitation, compensation and benefit information; internal operational information related to the structure of any of the Lockton Entities, including without limitation, the Operating Agreement . . . ." *See* Exhibit A, § 4.1(b); *accord* Exhibit B, § 4.1(b); Exhibit C, § 4.1(b); Exhibit D, § 4.1(b).

customers, including, without limitation, the customers' insurance needs and preferences, risk appetite, pricing and coverage requirements, present premiums, deductibles, collateral levels, commission arrangements, renewal dates, loss history, levels of satisfaction, and other information that would be greatly beneficial to competitors in soliciting such customers. This information has independent economic value, is not generally available to competitors, and is protected by Plaintiffs as a trade secret.

45.     Giblin's access to Lockton's trade secrets and other Confidential Information well positions her to subvert Lockton's interests, engage in unfair competition, and convince customers to move their business away from Lockton and colleagues to leave Lockton.

## VI.    GIBLIN'S AGREEMENTS WITH PLAINTIFFS

### A.    The Series Member Agreement

46.     Giblin is a party to the Series Member Agreement.

47.     Section 4.3 of the Series Member Agreement explicitly prohibits Giblin from disclosing or misusing the Series' Confidential Information. In pertinent part, that Section states:

> While Member is a Producer Member of the Series and at all times thereafter, and except with the prior written consent of the applicable Lockton Entity or as is reasonably necessary for Member to perform Member's responsibilities as a Producer Member of the Series, ***Member shall not, directly or indirectly, (a) disclose, or attempt to disclose, Confidential Information to anyone other than the members, officers, or authorized employees, attorneys or other agents and fiduciaries of the applicable Lockton Entity, (b) use, or attempt to use, Confidential Information for any unauthorized purpose, or (c) acquire, access, duplicate, copy, remove, download, upload, save, email, transmit or otherwise take, or attempt to do any of the foregoing with respect to, Confidential Information for any unauthorized purpose***.[4]

48.     Section 5.3 of the Series Member Agreement prohibits Giblin from soliciting "Producer Members, [e]mployees, and [o]thers" during her membership with the Series and for a

---

[4] Exhibit A, § 4.3 (emphasis added).

period of two years after. In pertinent part, that Section states:

> **Member shall not, directly or indirectly, for himself or on behalf of any other Person, solicit, recruit, hire, induce, persuade or encourage, or attempt to solicit, recruit, hire, induce, persuade or encourage, any employee, member, or consultant of Series or any Other Series, or Affiliate** (if, with respect to a consultant, substantially all of the services performed by such consultant are on behalf of the Series or the Other Series or Affiliate) to terminate his/its employment, membership, or consultant relationship with, or to render services for any competitor of Series, or any Other Series or Affiliate, as applicable, and shall not otherwise take any action to interfere with, or attempt to interfere with, any employee's, member's or consultant's relationship with Series, or any Other Series or Affiliate, as applicable.[5]

49. Section 5.4 of the Series Member Agreement explicitly prohibits Giblin from soliciting certain Series' customers during her membership with the Series and for a period of two years after. In pertinent part, the Member Agreement states:

> **Member shall not, directly or indirectly, for himself or on behalf of any other Person, solicit, induce, persuade or encourage, or attempt to solicit, induce, persuade or encourage any of the Customer Accounts described below, if any such Customer Account qualified as a Customer Account within the six (6) month period immediately preceding the sale of Member's Producer Unit, to reduce, terminate, or transfer to a competitor any products or services that are the same or substantially similar to, or directly competitive with, the products or services provided by the Series**, the Other Series, or any Affiliate. Member shall not, directly or indirectly, for himself or on behalf of any other Person, (i) accept, service, or work on, or attempt or threaten to accept, service or work on, any such competitive business from any of the Customer Accounts that Member may not solicit, or (ii) in any way do business with any of the Customer Accounts that Member may not solicit to the extent such business is the same or substantially similar to that provided by the Series, the Other Series or any Affiliate. The Customer Accounts to which this restriction applies are:

> (1) any of the Customer Accounts of the Series (A) produced by Member, (B) solicited by Member (in the case of prospective Customer Accounts), (C) serviced by Member, (D) for or about which Member acquired or had access to Confidential Information, or (E) with which Member has or had business contact; and, . . .

> (3) any of the Customer Accounts of the Other Series (A) produced by Member, (B) solicited by Member (in the case of prospective Customer Accounts), (C) serviced by Member, (D) for or about which Member acquired or had access to Confidential Information,

---

[5] *Id.* § 5.3 (emphasis added).

or (E) with which Member has or had business contact; and, . . .

(5)    any of the Customer Accounts of any Affiliate (A) produced by Member, (B) solicited by Member (in the case of prospective Customer Accounts), (C) serviced by Member, (D) for or about which Member acquired or had access to Confidential Information, or (E) with which Member has or had business contact.[6]

50.    Giblin also agreed that the above provisions of the Series Member Agreement are no greater than necessary to achieve their aim and are reasonably necessary for the protection of the Confidential Information, goodwill, and other legitimate protectable business interests of the Series, and, as applicable, the Other Series, the Affiliates, and Lockton Entities, whose legitimate protectable business interests include, without limitation, customer contacts and goodwill; relationships with Customer Accounts, employees, Producer Members, and consultants; maintaining the confidentiality of Confidential Information; ownership and workforce stability; and other interests described in Section 5.1 of the Series Member Agreement.[7]

51.    Giblin further agreed that her breach of the above-discussed provisions of the Series Member Agreement "will result in irreparable harm and continuing damage to the Series and, where applicable, any one or more Other Series, Affiliate, or other Lockton Entity" and entitles the Series to injunctive relief.[8]

52.    Giblin agreed that Missouri law would govern the Series Member Agreement and that any related disputes would be resolved in Missouri courts.  Specifically, the Series Member Agreement provides that: "This Agreement and all disputes, claims or issues that in any way pertain to the interpretation, validity or enforceability of, or otherwise arise out of or relate to this Agreement, the Operating Agreement and/or Member's membership in the Series … shall be

---

[6]  Exhibit A, § 5.4(a) (emphasis added).
[7]  *Id.* § 5.5.
[8]  *Id.* § 7.1.

subject to, governed by, and construed in accordance with the laws of the State of Missouri without reference to choice of laws, irrespective of the fact that one or both of the parties now is or may become a resident of a different state."[9]  It further provides that: "Any action involving any disputes, claims or issues that in any way pertain to the interpretation, validity or enforceability of, or otherwise arise out of or relate to this Agreement, the Operating Agreement and/or Member's membership in the Series, including, without limitation, any disputes, claims or issues arising out of or relating to the rights and interests of the Other Series, Affiliates and Lockton Entities as set forth herein, shall be brought exclusively in any Federal Court in Kansas City, Missouri or in the Circuit Court of Jackson County, Missouri," and that "[s]uch courts shall have exclusive jurisdiction over these matters, and Member hereby agrees to be subject to the personal jurisdiction of such courts."[10]

B.   **The LIA Member Agreement and the Solicitation**

53.   Giblin is also a party to the LIA Member Agreement, which contains nearly identical restrictions to the Series Member Agreement regarding the disclosure or misuse of LIA's Confidential Information,[11] and with respect to the non-solicit, non-servicing, and non-disclosure restrictions.[12]

54.   However, as part of the LIA asset transfer in December 2021, Giblin received a Continuing Producer Share payment of $619,843 in return for conveying her portion of the LIA Customer Accounts to the third party purchaser.

55.   In return for the payment, and as part of the transaction, Giblin executed a Solicitation agreement with LIA modifying the scope and time period of the non-solicitation

---

[9]   *Id.* § 7.7(a).
[10]   *Id.*
[11]   Exhibit B, § 4.3.
[12]   *Id.* § 5.3, 5.4.

obligations applicable to the Customer Accounts transferred to the third party. Specifically, the Solicitation provided that Section 5.4(b) of the LIA Member Agreement is amended and restated to prohibit Giblin from soliciting certain Customer Accounts transferred to the third party for a period of two (2) years following the closing date of the asset transfer, with that two year period ending December 21, 2023.[13]

56.    Giblin also agreed that the above-cited provisions of the LIA Member Agreement, as modified by the Solicitation, are no greater than necessary to achieve their aim and are reasonably necessary for the protection of the Confidential Information, goodwill, and other legitimate protectable business interests of LIA, and, as applicable, the Affiliates, and Lockton Entities, whose legitimate protectable business interests include, without limitation, customer contacts and goodwill; relationships with Customer Accounts, employees, Producer Members, and consultants; maintaining the confidentiality of Confidential Information; ownership and workforce stability; and other interests described in Section 5.1 of the LIA Member Agreement.[14]

57.    Giblin further agreed that her breach of the above-discussed provisions of the LIA Member Agreement, as modified by the Solicitation, "will result in irreparable harm and continuing damage to [LIA] and, if applicable, the Affiliate, and/or other Lockton Entity" and entitles LIA to injunctive relief.[15]

58.    Giblin agreed that Missouri law would govern the LIA Member Agreement and that any related disputes would be resolved in Missouri courts. The LIA Member Agreement contains a governing law and forum selection clause nearly identical to the one set forth in the Series Member Agreement, quoted supra.[16]

---

[13]  Exhibit B at 26.
[14]  Exhibit B § 5.1.
[15]  *Id.* § 7.1.
[16]  *Id.* § 7.7(a).

C.     **The LIS Member Agreement**

59.     Giblin is also a party to the LIS Member Agreement, which contains nearly identical restrictions to the Series Member Agreement regarding the disclosure or misuse of LIS's Confidential Information,[17] and with respect to the non-solicit, non-servicing, and non-disclosure restrictions.[18]

60.     Giblin also agreed that the above-cited provisions of the LIS Member Agreement are no greater than necessary to achieve their aim and are reasonably necessary for the protection of the Confidential Information, goodwill, and other legitimate protectable business interests of LIS, and, as applicable, the Affiliates, and Lockton Entities, whose legitimate protectable business interests include, without limitation, customer contacts and goodwill; relationships with Customer Accounts, employees, Producer Members, and consultants; maintaining the confidentiality of Confidential Information; ownership and workforce stability; and other interests described in Section 5.1 of the LIS Member Agreement.[19]

61.     Giblin agreed that Missouri law would govern the LIS Member Agreement and that any related disputes would be resolved in Missouri courts.  The LIS Member Agreement contains a governing law and forum selection clause nearly identical to the ones set forth in the Series Member Agreement, quoted supra, and the LIA Member Agreement.[20]

D.     **The Lockton Partners Partner Agreement**

62.     Giblin is also party to the Lockton Partners Partner Agreement.  The Partner Agreement contains restrictive covenant provisions, incorporated by reference from the Member Agreement, which prohibit Giblin from, among other things, directly or indirectly soliciting or

---

[17]   Exhibit C, § 4.3.
[18]   *Id.* § 5.3, 5.4.
[19]   *Id.* § 5.1.
[20]   *Id.* § 7.7(a).

attempting to solicit the associates/employees, members and consultants of the Series, Other Series, and Affiliates (as defined in the Member Agreement) to terminate their affiliation with the Series, Other Series and any Affiliate while Giblin is a Producer Partner and for four (4) years after the sale of her Series Producer Units.[21]

63.    Similarly, Giblin's Partner Agreement also contains restrictive covenant provisions, incorporated by reference from the Member Agreement, which prohibit her from, among other things, directly or indirectly soliciting or attempting to solicit Customer Accounts of the Series, Other Series and Affiliates (as defined in the Member Agreement) for or on behalf of any competitor, such as Alliant, while she is a Producer Partner and for four (4) years after the sale of her Series Producer Unit.[22]

64.    Further, Giblin is prohibited by the Partner Agreement from directly or indirectly, on behalf of herself or others, accepting, servicing or doing business with any of the Customer Accounts they are prohibited from soliciting.[23]

65.    Also, the Partner Agreement contains non-disclosure provisions, incorporated by reference from the Member Agreement, which prohibit Giblin, while she is a Producer Partner and thereafter, from, among other things, disclosing, using or taking for any unauthorized purpose any Confidential Information of the Series and other Lockton Entities (as defined in the Member Agreement), including, but not limited to, information related to Customer Accounts and trade secrets.[24]

66.    All Producer Partners agree to these restrictive covenants to prevent a departing Producer Partner from unfairly soliciting Customer Accounts of each respective Series, the Other

---

[21] (Exhibit D, § 5.1.)
[22] *Id.*
[23] *Id.*
[24] *Id.*

Series and any Affiliate for the benefit of the joint enterprise of the Producer Partners. The Partner Agreement restrictive covenants both bind and benefit all Producer Partners by protecting the goodwill of their joint enterprise through membership in Lockton Partners and their resulting common equity interests in the appreciation in the value of Lockton's global operations. A departing Producer Partner who successfully solicits Customer Accounts in violation of the Partner Agreement directly harms all remaining Producer Partners by negatively impacting the value of a Producer Partner's Partner Unit and injuring the competitive position of Lockton Partners as a whole.

67.     For the reasons set forth herein above, these restrictive covenants are essential to the protection of Confidential Information (as defined in the Member Agreements), specifically information related to Customer Accounts and trade secrets, goodwill, and other protectable business interests. It would cause great and irreparable harm to Plaintiffs to allow Giblin to act or attempt to act in violation of those restrictive covenants.

68.     Although certain provisions of the Partner Agreement state that they apply during the time Giblin was a Producer Member and for four years after termination of her membership in the Series, here, that four-year period will be tolled during the period of time from her first attempted, threatened or actual breach, until the date the dispute is finally resolved and all periods of appeal have expired.[25]

69.     Giblin agreed any breach of the covenants incorporated in the Partner Agreement would result in irreparable harm to the Series, Other Series, Affiliates and other Lockton Entities, and entitles Plaintiffs to the injunctive relief they seek herein.[26]

70.     Giblin further acknowledged the covenants in the Partner Agreement are no greater

---

[25] *Id.* at § 5.5.
[26] *Id.* at § 5.3.

than reasonably necessary for the protection of the Confidential Information, goodwill and protectable business interests of the Series, Other Series and Affiliates, and the Confidential Information of the other Lockton Entities, and are reasonable in their scope.[27]

71.     To the extent the restrictive covenants incorporated in the Partner Agreement are determined to be unreasonable, Giblin agreed to request that the Court modify and enforce the restrictive covenants to the fullest extent available under the applicable law.[28]

72.     Giblin has expressly recognized that the Partner Agreement, and the covenants incorporated therein, are supported by adequate consideration.[29]

73.     Giblin also agreed that to the extent Plaintiffs prevail in a dispute like this related to the Partner Agreement, Plaintiffs are entitled to an award of attorneys' fees in addition to any other remedies available to them.[30]

### E.     The Operating Agreements

74.     Giblin is also bound by the Series Operating Agreement, the LIA Operating Agreement, the Fourth Amended and Restated Operating Agreement of Lockton Investment Securities, LLC ("LIS Operating Agreement"), and the First Amended and Restated Operating Agreement of Lockton Partners, LLC (the "Lockton Partners Operating Agreement" together with the Series Operating Agreement and LIA Operating Agreement hereinafter referred to as the "Operating Agreements").

75.     Among other things, Giblin is subject to the termination provisions contained in the Operating Agreements, which provide the only methods upon which a Producer Member can terminate her membership.   The Operating Agreements provide the following voluntary

---

[27] *Id.* at § 5.2.
[28] *Id.* at § 5.7.
[29] *Id.* at Page 2.
[30] *Id.* at. § 5.2.

termination provision by members:

> Any Producer Member may be terminated as a Member:
>
> (a) by such Series Member on thirty (30) days' written notice to the Series;
> . . . .

Series Operating Agreement, § 5.10(a); LIA Operating Agreement, § 5.10(a) and LIS Operating Agreement, § 5.10(a); Producer Partner Operating Agreement, § 5.10(a) (containing nearly identical language).

76.    The purpose of the 30-days' notice requirement is to facilitate a smooth transition of services for the benefit of Lockton upon a Producer Member's departure, to protect Lockton's Confidential Information and relationships with customers and personnel, and to prevent a coordinated effort of Producer Members to resign immediately, affiliate with a competitor of Lockton, solicit additional employees to also resign, and immediately begin soliciting clients of Lockton.

77.    The Operating Agreements acknowledge that Giblin is subject to the non-disclosure, non-solicitation, and related obligations contained in the Member Agreements.[31]

78.    Further, Section 5.5 of the Operating Agreements provides that Customer Accounts are the property of the respective series and that no Producer Member has any right, title, or interest in such Customer Accounts or in any records pertaining to such Customer Accounts.[32]

## VII.    GIBLIN'S RESIGNATION AND OFFENDING CONDUCT

### A.    Alliant's Raid History

79.    Alliant and Lockton both compete in the market for insurance brokerage and consulting services addressing a variety of industries and risks.

---

[31]    Operating Agreements, § 11.17.
[32]    *Id.* § 5.5.

80.     Lockton has an established reputation as a top global expert and industry leader in the commercial insurance brokerage business, including in California.

81.     Through recent litigation between Alliant and Lockton stemming from Alliant's raid of another Lockton series' office, Alliant became well aware of the restrictive covenants contained in Lockton's agreements with its owner Producer Members.  For example, in March 2019, Alliant targeted Lockton's Denver office, poaching more than 20 Producer Members and employees.  Lockton sued, and by the date of the preliminary injunction hearing, Alliant had solicited at least 144 Lockton customers, and 50 customers had moved their business to Alliant.[33]  Vice Chancellor Laster of the Delaware Chancery Court issued a comprehensive 57-page opinion finding that Alliant had "engineered" and "coordinate[d]" a sweeping raid against Lockton, induced Lockton employees to breach their contracts, and initiated a "full court press" to solicit Lockton's clients.[34]  The Court found, among other things, that Alliant, with the assistance of its outside counsel, were responsible for "secretive and underhanded behavior in violation of contractual obligations and legal requirements" and for attempting to "mask their activities under a *façade of compliance measures* and through misleading representations and averments."[35]  The court issued a preliminary injunction enjoining Alliant, along with its affiliated entities, from (i) soliciting or servicing the clients and prospects it targeted in the Lockton raid (including clients that had already been diverted to Alliant); and (ii) soliciting Lockton employees, members, or consultants to leave Lockton to work at Alliant.[36]

82.     Alliant knows that the Lockton agreements require Producer Members to provide

---

[33] *See Mt. West Series of Lockton Cos., LLC v. Alliant Ins. Servs.,* No. 2019-0226-JTL, 2019 WL 2536104, at *8 (Del Ch. June 20, 2019).
[34] *Id.* at *1, *7.
[35] *Id.* at *22 (emphasis added).
[36] *Id.* at *25.

30 days' written notice of their termination to Lockton, and prohibit Producer Members, for a period of at least two years following the sale of their Producer Unit in the applicable Lockton series, from either directly or indirectly through third parties (i) soliciting, recruiting, or hiring "any employee, member, or consultants;" (ii) soliciting, servicing, or accepting certain Lockton customer accounts; and (iii) disclosing, using, or taking (or attempting to disclose, use, or take) any Confidential Information (as defined in the agreement) for any purpose.

83.     Notably, these non-solicitation and non-disclosure restrictions are essentially identical to the ones that Alliant itself imposes on its employees and producer members in order to protect its relationships with customers, employees, and producer members and preserve its trade secrets and confidential information.

84.     Accordingly, when Alliant commenced its present attempts to recruit and hire Giblin, Alliant had full knowledge that Giblin was party to binding agreements with Lockton prohibiting her immediate transition to Alliant and was aware of the restrictive covenants to which she was bound.  On information and belief, Alliant's efforts to solicit and hire Giblin, and potentially others, to join their ranks are aimed at taking Lockton's customers, trade secrets, and other Confidential Information along with them.  It is through this planned scheme, and not through legitimate competition, that Alliant apparently seeks to grow its West Coast insurance brokerage business..

85.     This scheme is in keeping with Alliant's growth strategy of targeting producers with books of business and teams from competitors, otherwise known throughout Alliant as "leveraged hires," resulting in a string of lawsuits against Alliant for such corporate raids.[37]  This

---

[37]   *See, e.g.*, *Aon Risk Servs. Cos. v. Alliant Ins. Servs, et al,* No. 1:21-cv-06870 (N.D. Ill. 2021); *Partners Group, LTD. vs Michael Bonville, et al.*, No. 20CV34115 (Or. Multnomah County Cir. Ct. 2021); *Willis Towers Watson Southeast, Inc. v. Alliant Insurance Services, Inc. et al*, No. 3:21-cv-00417 (W.D.N.C. 2021); *Aon Risk Services*

pattern of unscrupulous corporate raiding is so ingrained in Alliant's business model that in prior raids Alliant even prepared presentations for its Board of Directors analyzing the total revenue that Alliant expected to realize from the raids against the anticipated legal and settlement costs.[38]

### B. Giblin's History of Misconduct at Lockton

86.     While Giblin has attempted to blame her exit from Lockton, and related breaches of contractual and fiduciary obligations to Lockton, on purported mistreatment by Lockton, in fact, her own misconduct precipitated her departure from Lockton.

87.     After joining Lockton, with Lockton's help and through its vast resources, Giblin quickly demonstrated her abilities as a Lockton owner and Producer Member and became very successful in a short period of time.  Recognizing Giblin's potential as a leader in the organization, Lockton promoted Giblin to the position of President of its San Diego and Irvine Offices, overseeing the overall operation and development of business in those locations.

88.     Giblin recognized at the time that leadership in the insurance industry "isn't 'male dominated,' but rather 'predominately male,'" and that she was the only one who could craft her journey and path for success.

89.     However, over time Lockton grew concerned that Giblin was abusing the position in which she was placed and creating a toxic environment for those under her leadership.  Lockton

---

*Companies, Inc. et al v. Alliant Insurance Services, Inc. et al,* No. 1:19-cv-07312 (N.D. Ill 2020); *Arthur J. Gallagher & Co. v. Alliant Insurance Services, Inc. and Stone Point Capital, LLC,* No. 2020-0780-JTL (Del. Ch. 2020); *Mt. West Series of Lockton Cos., LLC v. Alliant Ins. Servs.,* No. 2019-0226-JTL (Del. Ch. 2020); *Willis Towers Watson PLC v. Noonan,* No. 1:18-cv-06587 (S.D.N.Y. 2018); *Willis Ins. Servs. of Ga. v. Alliant Ins. Servs.,* No. 8:18-cv-01826 (M.D. Fla. 2018); *Corporate Synergies Group, LLC v. Andrews,* No. 2:18-cv-13381 (D.N.J. 2018); *NFP Corp. and Maschino, Hudelson & Associates, L.L.C. v. Alliant Insurance Services, Inc., et al,* No. 2018-0688-AGB (Del. Ch. 2018)*; Cook Maran & Assocs., Inc., v. Scrocca,* No. C¬209-17 (N.J. Sup. Ct. 2017); *Wells Fargo Ins. Servs. v. Alliant Ins. Servs.,* 2017-0540-JTL (Del Ch. 2017); *Hays Group, Inc. v. Peters,* No. 16-cv-02352 (D. Minn. 2016); *Aon PLC v. Heffernan,* No. 1:16-cv-1924 (N.D. Ill. 2016); *Regions Ins. Inc. v. Alliant Ins. Servs.,* No. 3:13-cv-00667 (S.D. Miss. 2013); *Aon Risk Servs., N.E. v. Cusack,* 34 Misc. 3d 1205(A) (N.Y. Sup. Ct. Dec. 20, 2011).
[38]     *Cusack,* 34 Misc. 3d 1205(A), at *5–6 (describing cost-benefit analysis spreadsheet attached to a memo from Alliant's COO to its Board of Directors in 2011).

conducted multiple investigations into her conduct based on a myriad of complaints, provided warnings and coaching regarding her behavior and treatment of Lockton's producer members, associates, and employees, and retrained her on various leadership aspects to insure she was leading in accordance with Lockton's core values, which exemplify an inclusive and respectful work environment.

90.     Despite Lockton's investment into her success, Giblin began shopping for a new location to transition Lockton's business, directly misleading Lockton as to her intentions. When Lockton heard in the marketplace that she was looking to leave, Lockton approached Giblin and again offered its support. Lockton requested that Giblin be transparent regarding her intentions so that Lockton could help facilitate and orderly transition, should that become necessary. Giblin denied her intentions of leaving Lockton to join a competitor.

### C.     Giblin's Premature Termination and False Accusations of Misconduct Against Lockton

91.     On November 29, 2022, Giblin abruptly reversed course and sprung the news on Lockton that she intended to terminate her owner interests in Lockton immediately and join competitor Alliant, despite knowing full well that her agreements with Lockton require advance notice.

92.     Specifically, Giblin sent a termination notice by email to Plaintiffs indicating that she intended to "resign[] as a Producer at Lockton" effective immediately, and stated the she believed she had no obligation to answer any specific questions regarding client issues that may arise in the next few weeks.[39]  The termination notice failed to mention or honor the 30 days' notice requirement in the Operating Agreements and gave no indication that Giblin was headed to

---

[39]  A true and accurate copy of Giblin's termination notice is attached hereto as **Exhibit E** and incorporated herein by this reference.

Alliant, Lockton's direct competitor.

93.    The same day, Lockton sent Giblin a formal letter via email and FedEx documenting the 30-days' notice requirement, which expires on December 29, 2022, and reminding her of the continued fiduciary and contractual duties that she owes to Lockton by way of the Member Agreements, Partner Agreement, and Operating Agreements.[40]

94.    Shortly after her resignation, also on November 29, 2022, Giblin sent to Lockton, via her counsel, a 15-page demand letter denying the enforceability of the 30-day notice requirement and the restrictive covenants contained in her Member Agreements, Partner Agreement, and Operating Agreements.  Giblin also incorrectly argued that because Giblin worked and lived in California, California and not Missouri law should be applicable to the parties' relationship and that Lockton's restrictions are not enforceable under California law.  While the letter did not mention Alliant, Giblin was clear that she "will be continuing to work in the employee benefits industry and will be commencing such employment immediately."[41]

95.    In the same demand letter, in a clearly tactical effort to gain leverage to compete against Lockton immediately in blatant violation of her agreements, Giblin began fabricating, through counsel, claims against Lockton regarding alleged mistreatment.  These accusations are utterly false.  Moreover, despite Giblin's efforts to deflect from her own misconduct, her accusations against Lockton in no way excuse her failure to comply with her continuing contractual and fiduciary obligations to Lockton.  Put simply, Giblin is a disgruntled Producer Member using threats of baseless claims against Lockton to manipulate Lockton into acceding to her demands not to enforce the restrictive covenants in the Member and Partner Agreements,

---

[40]  A true and accurate copy of Lockton's letter is attached hereto as **Exhibit F** and incorporated herein by this reference.
[41]  *Id.*

pursuant to which she has been so handsomely compensated.

96.     Since her resignation, Lockton has continued to engage with Giblin, through her counsel, but she continues to deny her obligations to abide by the 30-day notice provision or other restrictive covenants.

97.     Later in the day on November 29, 2022, Lockton learned that Giblin planned to join Alliant. In addition to its communications with Giblin and her counsel, Lockton has put Alliant on notice that Giblin remains a Producer Member and Producer Partner of Lockton through December 29, 2022 with continuing obligations to Lockton.

98.     Upon information and belief, Giblin commenced her employment relationship with Alliant on November 29, 2022 in direct contravention of the Operating Agreements and Member Agreements.

**C.      Giblin's Misappropriation of Plaintiffs' Confidential Information and Improper Solicitation of Plaintiffs' Personnel and Customer Accounts**

99.     On information and belief, efforts by Giblin to misappropriate Plaintiffs' Confidential Information and trade secrets are well underway.

100.    Indeed, the very same day that Giblin was accessing her Lockton email account through which she transmitted notice of her resignation, she was already employed by Lockton's competitor, Alliant, and thus wearing two hats. Her dual access to competing information and technology systems of Lockton and Alliant, during a period of competing loyalties to both companies, was improper and indicative of misappropriation.

101.    Moreover, Giblin failed to ensure all Lockton property and data were out of her possession prior to joining Alliant. In Giblin's November 29, 2022 resignation letter to Lockton, she admitted that she maintained hard copy documents and other Lockton Confidential information on her personal electronic devices. In Lockton's November 29, 2022 letter to Giblin, Lockton

demanded that Giblin immediately return and surrender all Confidential Information, including any electronic devises that were used for business purposes, and provided notice of her duty to preserve all evidence related to her failure to comply with the Member Agreements, Partner Agreement and Operating Agreements. At the time of this filing, while Giblin's counsel has offered to speak, Lockton has not received the hard copy documents that Giblin acknowledged that she retains, and Giblin has failed to return Lockton's Confidential Information and trade secrets that she has already admitted she has retained on her personal electronic devices.

102. On information and belief, Giblin violated, and continues to violate, her obligation to refrain from soliciting Plaintiffs' Producer Members or employees by surreptitiously soliciting Producer Members and employees to leave their membership and/or employment with Plaintiffs and work with her at Alliant.

103. On information and belief, Giblin has no intention of honoring her obligation to refrain from soliciting or servicing Plaintiffs' customers by soliciting, directly or indirectly, Customer Accounts to move their business from Plaintiffs to Alliant. Indeed, Giblin has indicated that she never intended to honor her commitments to Lockton, despite benefitting from them generously over the years.

## VIII.  IRREPARABLE HARM TO LOCKTON

104. If Giblin is permitted to use Lockton's trade secrets and Confidential Information to compete against Lockton, Lockton will be irreparably harmed.

105. Lockton has expended considerable time, effort, and resources developing and marketing its products and services and cultivating its relationships with Producer Members, employees, and consultants, as well as Customer Accounts and prospective customers.

106. Giblin had, and continues to have, access to valuable Confidential Information and

trade secrets concerning Customer Accounts that she is obligated to use solely for the benefit of the Lockton or its affiliates.

107. Lockton has identified Producer Members, employees, and Customer Accounts potentially at risk of departure as a result of Giblin's departure. Lockton reasonably expects that it may lose multiple colleagues, and numerous clients in the absence of injunctive relief.

108. With this action, Lockton seeks to enjoin Giblin from further misappropriation of its valuable relationships with its customers, Producer Members, consultants, employees, and Confidential Information. Lockton also seeks to recover damages that it has suffered as a result of the unlawful conduct of Giblin and those acting in concert with her.

**COUNT I**
**BREACH OF CONTRACT**
**(MEMBER AGREEMENTS, PARNTER AGREEMENT AND OPERATING AGREEMENTS)**

109. Plaintiffs incorporate by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

110. Lockton and Giblin entered into valid contracts, the Member Agreements, Partner Agreement, and Operating Agreements, for the purpose of describing the parties' relative rights and obligations with respect to Giblin's membership in Lockton and post-membership conduct.

111. The Member Agreements, Partner Agreement, and Operating Agreements were supported by mutual promises and valuable consideration.

112. Plaintiffs have complied with and performed all obligations under the Member Agreements, Partner Agreement, and Operating Agreements.

113. The Operating Agreements require Giblin to provide 30-days' written notice of the termination of her membership in Lockton.

114. The Member Agreements prohibit Giblin from: (i) disclosing or misusing Plaintiffs

Confidential Information; (ii) soliciting "Producer Members, [e]mployees, and [o]thers" during her membership with Plaintiffs and for a period of two years after; and (iii) soliciting, or servicing or doing business with, certain Customer Accounts during her membership with the Series and for a period of two years after.[42]

115.    The Partner Agreement prohibits Giblin from (i) disclosing information about current and former Producer Members, associates/employees, consultants and other personnel and about Customer Accounts and disclosing other Confidential Information; (ii) soliciting, or attempting to solicit, directly or indirectly, the current and former Producer Members, associates/employees, consultants and other personnel to leave their employment and/or membership with the Series; (iii) soliciting, or attempting to solicit, directly or indirectly, the Series' Customer Accounts to move their business; and (iv) accepting or servicing the Series' Customer Accounts who have moved their business.

116.    Giblin has breached and continues to materially breach the express terms of the Operating Agreements, Partner Agreement, and Member Agreements in the following manner:

(a)    Failing to provide 30 days' written notice of termination of her membership in the Series, LIA, LIS, and Lockton Partners;

(b)    Failing to return Plaintiffs' Confidential Information;

(c)    On information and belief, taking Plaintiffs' Confidential Information for use on behalf of a competitor;

(d)    On information and belief, soliciting, or attempting to solicit, directly or indirectly, current Producer Members and associates/employees to leave their membership and/or employment with the Series and work with her at a competitor; and

---

[42] As modified by the Solicitation.

(e)　　On information and belief, soliciting, or attempting to solicit, directly or indirectly, Customer Accounts to move their business from Plaintiffs.

117.　　As a direct and proximate result of Giblin's conduct in material breach of the Member Agreements, Partner Agreement and Operating Agreements, Plaintiffs have suffered and will continue to suffer substantial damage and irreparable harm.

**COUNT II**
**TORTIOUS INTERFERENCE WITH PLAINTIFFS' PROSPECTIVE ECONOMIC ADVANTAGE/PROSPECTIVE BUSINESS RELATIONSHIPS**

118.　　Plaintiffs incorporate by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

119.　　During all relevant times, Plaintiffs were continuously engaged in numerous discussions with current customers about potential future business opportunities. During all relevant times, Plaintiffs were also in active discussions with potential customers to solicit their business. Given Plaintiffs' time and effort with respect to this business development, as well as Plaintiffs' reputation in the industry, Plaintiffs were reasonably likely to secure these business opportunities.

120.　　Upon information and belief, Giblin, acting individually and/or in concert with others, has, in a willful, wanton, or malicious manner, intentionally interfered with Plaintiffs' prospective business relationships by targeting and recruiting Plaintiffs' Customer Accounts and Producer Members and employees that Giblin understood to be assisting with the development of these business relationships, and by aiding, inducing, and/or participating in the solicitation of Plaintiffs' Customer Accounts, Producer Members, and employees.

121.　　Giblin's intentional interference is the proximate cause of Plaintiffs suffering an enhanced risk of loss of customer and employee relationships that Plaintiffs spent significant time

and energy developing. But for Giblin's interference, Plaintiffs had a reasonable expectation of maintaining their existing relationships during the terms of non-solicitation provisions set forth in the relevant agreements with respect to their customers and personnel.

122. As a direct and proximate result of Giblin's intentional interference, Plaintiffs have suffered and will continue to suffer substantial damage and irreparable harm.

## COUNT III
## BREACH OF FIDUCIARY DUTIES AND/OR DUTIES OF LOYALTY

123. Plaintiffs incorporate by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

124. Pursuant to the Operating Agreements, Member Agreements, Partner Agreement, applicable Missouri law, and/or as an owner, officer, Producer Member and Producer Partner of Lockton, Giblin owes fiduciary duties and/or duties of loyalty to Lockton and has owed such duties at all times that she has been a Producer Member and Producer Partner. Specifically, Giblin agreed to, among other things, "devote full time and attention to the Business of [Lockton] . . . and do all things as may be reasonably directed by appropriate officers of [Lockton]." Operating Agreements § 5.3.

125. Giblin has breached her fiduciary duties and/or duties of loyalty owed to Lockton in the following manner:

(a) Engaging in negotiations with Alliant that created incentives for divided loyalty;

(b) Failing to provide 30 days' written notice of termination of her membership in the Series, LIA and LIS and her partnership in Lockton Partners and beginning work at Alliant, a competitor to Lockton, while still a Producer Member and Producer Partner of Plaintiffs;

(c) Concealing from Lockton that she had accepted an offer to join Alliant;

(d)     Failing to return Plaintiffs' Confidential Information;

(e)     On information and belief, taking Plaintiffs' Confidential Information for use on behalf of Alliant;

(f)     On information and belief, soliciting, or attempting to solicit, directly or indirectly, current Producer Members and associates/employees to leave their membership and/or employment with the Series and work with him at Alliant; and

(g)     On information and belief, soliciting, or attempting to solicit, directly or indirectly, Customer Accounts to move their business from Plaintiffs to Alliant.

126.    As a direct and proximate result of Giblin's conduct in material breach of her fiduciary duties and/or duties of loyalty owed to Lockton, Plaintiffs have suffered and will continue to suffer substantial damage and irreparable harm.

127.    Giblin's actions in breach of her fiduciary duties and/or duties of loyalty owed to Plaintiffs and resulting in substantial damage and irreparable harm to Plaintiffs were taken maliciously and were the result of Giblin's willful misconduct.

## COUNT IV
## MISAPPROPRIATION OF TRADE SECRETS (VIOLATIONS OF THE MISSOURI UNIFORM TRADE SECRETS ACT (MO. REV. STAT. § 417.450 *ET SEQ.*) AND DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836 *ET SEQ.*))

128.    Plaintiffs incorporate by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

129.    Lockton's Confidential Information, "includes, without limitation, trade secrets, non-public proprietary information, formulas, patterns, compilations, programs, devices, methods, techniques, or processes; sales and other business methods or policies; prices or price formulas; procedures; the identity of and information concerning former or current Customer Accounts of the Series, the Other Series and/or any Affiliate, including but not limited to Customer Account

needs and preferences, levels of satisfaction and the terms of engagement and transactions between the Series, the Other Series or Affiliates and/or its or their Customer Accounts; revenues, expenses, budgeting, finances and other financial information; computer systems, programs and software . . .; business, marketing and development strategies and plans; the Series; Other Series and Affiliate member and/or Lockton Entity personnel information, including without limitation, compensation and benefit information; internal operational information related to the structure of any of the Lockton Entities, including without limitation, the Operating Agreement[.]"[43]

130.  Lockton's Confidential Information has actual and potential economic value and is subject to efforts by Lockton to keep such information confidential and secret.

131.  For example, Lockton possesses Confidential Information about its Customer Accounts' insurance needs and preferences, risk appetite, pricing and coverage requirements, present premiums, deductibles, collateral levels, commission arrangements, renewal dates, loss history, levels of satisfaction, and other information that would be greatly beneficial to competitors in soliciting such Customer Accounts.  This information has independent economic value, is not generally available to competitors, and is protected by Lockton as a trade secret.

132.  Lockton's Confidential Information constitutes trade secrets.

133.  Lockton employs reasonable measures to ensure that its Confidential Information remains secret, including by entering into agreements that obligate those with access to ensure that its Confidential Information is protected.

134.  In her capacity as Producer Member and Producer Partner of Lockton, Giblin has access to Confidential Information from Lockton.

135.  Lockton's confidential and proprietary information is given to Giblin pursuant to

---

43  Exhibit A, § 4.1(b); Exhibit B, § 4.1(b); Exhibit C, § 4.1(b).

express agreements that the secrecy of the information will be maintained and that the information is to be kept confidential.

136.    On information and belief, Giblin knowingly, and with an evil motive or reckless indifference to the rights of Plaintiffs, misappropriated Lockton's Confidential Information in recent weeks, despite planning to depart Lockton, in order to use such Confidential Information on behalf of Alliant.

137.    On information and belief, Giblin is using, or intends to use, this Confidential Information to solicit business from Lockton's current and prospective Customer Accounts and to solicit Lockton's Producer Members, Producer Partners, and employees to depart Lockton and join or do business with Alliant, without Lockton's consent.

138.    Giblin's misappropriation of Lockton's Confidential Information has caused and, unless enjoined, will continue to cause damages and irreparable harm to Plaintiffs.

## COUNT V
## DECLARATORY JUDGMENT

139.    Plaintiffs incorporate by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

140.    Giblin has effectively taken the position that California law and public policy prevent Plaintiffs from enforcing the choice of law, forum, notice of termination, and non-solicitation provisions of the Member Agreements, Partner Agreement, and Operating Agreements.

141.    Specifically, Giblin has taken the position that because Giblin worked and lived in California, she is entitled to the protections of California law regarding workplace mobility. Giblin denied enforceability of the choice of law and forum provisions by invoking California law and stating that she will comply with her lawful obligations to Lockton in accordance with California

law but not Missouri law. Giblin also denied enforceability of the 30-days' notice requirement and non-solicitation provisions. Giblin has also refused to acknowledge that these provisions are lawful and enforceable and, to the contrary, has rejected the legal basis for Plaintiffs' positions that they are, indeed, lawful and enforceable.

142.     There exists an actual, justiciable controversy between Plaintiffs and Giblin relating to their legal rights, duties, and obligations under the Member Agreements, Partner Agreement, and Operating Agreements that is ripe for adjudication.

143.     Declaratory relief will resolve the legal issues between the parties regarding the enforceability of the Member Agreements, Partner Agreement, and Operating Agreements, including specifically the choice of law, forum, notice of termination, and non-solicitation provisions.

144.     Plaintiff thus request a judgment declaring the rights and obligations of the parties under the Member Agreements, Partner Agreement, and Operating Agreements and that the choice of law, forum, notice of termination and non-solicitation provisions contained therein are lawful and enforceable.

## REQUEST FOR JURY TRIAL

145.     Plaintiffs hereby demand a jury trial.

## PRAYER FOR RELIEF

146.     Wherefore, Plaintiffs pray for an order of this Court:

(a)     Declaring that Giblin has: (i) breached the Member Agreements, Partner Agreement and Operating Agreements; (ii) interfered with Plaintiffs' prospective economic advantage and prospective business relationships; (iii) breached fiduciary duties and/or duties of loyalty; and (iv) misappropriated Plaintiffs' trade secrets;

(b)     Declaring the rights and obligations of the parties under the Member Agreements, Partner Agreement and Operating Agreements and that the choice of law, forum, notice of termination, and non-solicitation provisions contained therein are lawful and enforceable;

(c)     Ordering that Giblin pay to Plaintiffs all damages sustained by Plaintiffs arising from the foregoing misconduct;

(d)     Ordering that Giblin account to Plaintiffs for all gains, profits, and other advantages unjustly obtained by Giblin as a result of his wrongful acts;

(e)     Ordering that Giblin account to Plaintiffs for a reasonable royalty for her misappropriation of trade secrets;

(f)     Ordering that Giblin provide an accounting to Plaintiffs of any and all trade secrets and other confidential and proprietary information that have been used or disclosed to any person or entity;

(g)     Award exemplary damages as authorized by the Missouri Uniform Trade Secrets Act and/or the Defend Trade Secrets Act for the willful and malicious misappropriation of Plaintiffs' trade secrets;

(h)     Issue a temporary, preliminary, and permanent injunction: (i) enjoining Giblin from joining Alliant or another competitor of Plaintiffs until the 30 days' notice period expires on or about December 29, 2022; (ii) enjoining Giblin from directly or indirectly: (1) maintaining, possessing, using, disclosing, or providing to any third party Plaintiffs' Confidential Information; (2) using Plaintiffs' Confidential Information to solicit or render services to Customer Accounts; (3) using Plaintiffs' Confidential Information to solicit Plaintiffs' Producer Members or employees; (4) violating her duties to, and non-solicitation and related obligations and confidentiality agreements with, Plaintiffs; (5) soliciting, recruiting, hiring,

inducing, persuading, or encouraging (or attempting to do same) any employee, Producer Member, or consultant of the Series, LIA, or any other Lockton series or affiliate to terminate his/her/its employment, membership, producer, or consultant relationship with, or to render services for any competitor of the Series, LIA, or any other Lockton series or affiliate, as applicable, while a Producer Member and for four years after any sale of her Producer Unit; (6) soliciting, inducing, persuading, or encouraging (or attempting to do same) any of the restricted Customer Accounts described in the Member Agreements to reduce, terminate, or transfer to a competitor any products or services that are the same or substantially similar to, or directly competitive with, the products or services provided by the Series, LIA, or any other Lockton Series or affiliate, while a Producer Member and for four years after any sale of her Producer Unit; and (7) accepting, servicing, or working on any competitive business from any of the Customer Accounts that Giblin may not solicit under the Member Agreements, or in any way doing business with any of the Customer Accounts that Giblin may not solicit under the Member Agreements to the extent such business is the same or substantially similar to that provided by the Series, LIA or any other Lockton Series or affiliate, while a Producer Member and for four years after any sale of her Producer Unit; and (iii) ordering that Giblin (1) account for all Plaintiffs' Confidential Information that Giblin misappropriated; (2) return to Plaintiffs all of Plaintiffs' Confidential Information in Giblin's possession, custody, and control; (3) certify in writing and under the pains of penalties of perjury, after returning Plaintiffs' Confidential Information, that all paper and electronic copies of all Plaintiffs' Confidential Information in his possession, custody, or control have been returned and, if electronic, upon resolution of these proceedings, have been permanently deleted from any location where they have been stored; (4) provide an accounting for any products, plans, services, contracts, or other materials that involve or rely on any of Plaintiffs' Confidential Information and

for any business obtained by Giblin as a consequence of his unlawful actions;

(i)     Award all of the costs and attorneys' fees Plaintiffs have incurred in connection with this action; and

(j)     Award such other and further relief as this Court deems just and proper.

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Jennifer L. Berhorst*

Robert J. Hoffman MO #44486
Jennifer L. Berhorst MO #61784
1200 Main Street, Suite 3800
Kansas City, MO 64105
(816) 374-3203 (telephone)
(816) 374-3300 (facsimile)
rjhoffman@bclplaw.com
jennifer.berhorst@bclplaw.com

and

Michael B. Carlinsky (*pro hac* forthcoming)
Kimberly Carson (*pro hac* forthcoming)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000 (telephone)
michaelcarlinsky@quinnemanuel.com
kimberlycarson@quinnemanuel.com

*Attorneys for Plaintiffs*