| | |
|---|---|
| LOCKTON COMPANIES, LLC—PACIFIC SERIES, LOCKTON INVESTMENT ADVISORS, LLC, LOCKTON INVESTMENT SECURITIES, LLC f/k/a LOCKTON FINANCIAL ADVISORS, LLC, and LOCKTON PARTNERS, LLC, <br><br>    Plaintiffs,<br> vs.<br><br>SALLIE F. GIBLIN,<br><br>    Defendant. | Case No. 4:22-cv-00791-SRB |

## DEFENDANT SALLIE GIBLIN'S MOTION TO DISMISS

  Under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), Defendant Sallie Giblin respectfully moves this Court to dismiss Plaintiffs' Complaint in its entirety, including all claims and prayers for relief, asserted in the Complaint. In support of this Motion, Giblin submits her accompanying Suggestions in Support and states:

  1. Giblin began working for Lockton in 2006. With a combination of hard work and talent, Giblin became a successful producer and leader in Lockton's Pacific Series. Giblin was a trailblazer for women, becoming the first woman to lead a Lockton office.

  2. Giblin hoped through leadership and dedicated efforts she could improve Lockton's culture—a culture defined by a prevalence of misogynistic attitudes and a toxic work environment. After challenging male Lockton executives about matters of company direction and policy, Giblin became the target of discrimination, harassment, and retaliation. Lockton cut the support staff for her book of business. Her clients complained and she lost some accounts.

Lockton removed her from the Pacific Series' Executive Committee. Because of Lockton's retaliatory acts, Giblin ultimately realized her attempts to improve the company culture were futile, and she decided to seek other employment.

3. Lockton executives promised Giblin they would help her transition to a new job if that was what she wanted. Instead of fulfilling that promise, Lockton continued its pattern of retaliation by filing this lawsuit after Giblin resigned to prevent her from working for a competitor and tarnish her professional reputation.

4. Lockton relies on fabricated, baseless accusations that Giblin misappropriated their contractually defined "confidential information"—which they then summarily conflate with the legal term "trade secrets"—as the sole basis for subject-matter jurisdiction in this Court. However, Lockton's misappropriation of trade secrets allegations are grossly deficient under the federal pleading standards for the following reasons:

- The Complaint fails to state a plausible claim that Giblin has or will disclose or use any supposed trade secrets. It merely includes speculative boilerplate conclusions, primarily made "upon information and belief." It is completely devoid of supporting factual assertions about (without limitation) what type of information Giblin allegedly misappropriated, how she allegedly misappropriated it, and how this hypothetical misappropriation allegedly harmed Lockton economically.
- The Complaint contains no allegations, much less plausible allegations, that Giblin acquired any trade secrets through improper means. It only points out the obvious fact that Giblin, like many other Lockton employees, had access to confidential information—which it again conflates with trade secrets—while she was employed at Lockton. An employee having access to information because of their position in a company does not retroactively constitute acquiring trade secrets through improper means just because the employment relationship ends.

2

- The Complaint does not identify the alleged trade secrets with any particularity. It contains one broad legal conclusion: "Lockton's Confidential Information constitutes trade secrets." This legal conclusion should be disregarded in the analysis of this motion because it is not a factual assertion. Rather, the rest of the Complaint and attached agreements contradict this legal conclusion by repeatedly referring to "Confidential Information" and "trade secrets" as distinct categories of information.

- The customer information that Lockton asserts constitutes "Confidential Information" under its agreements with Giblin cannot be Lockton's trade secret because Lockton does not own it. Customers own their insurance policies. The associated information—*e.g.*, policy numbers, coverages, carriers, expiration and renewal dates, rates—and any general information about the customer's needs, preferences, risk tolerance, and financial history belongs to the customer, not the brokerage firm, and can be freely shared with anyone the customer chooses. Therefore, the brokerage firm cannot claim information it possesses about its customers as its trade secrets.

- Much of the customer information Lockton attempts to claim as "Confidential Information" and/or "trade secrets" cannot be a trade secret because it is publicly available. Under ERISA, many (if not most) companies must annually file a Form 5500 with the Department of Labor disclosing their retirement and other welfare benefit plans. These forms publicly disclose numerous plan details, including the nature and starting date of the plan, the number of participants, the plan sponsor and administrator, any person or entity receiving commissions for the plan, and information regarding the funding of the plan and provided benefits.

5. Because Lockton's baseless misappropriation of trade secrets claim under the DTSA, which is their only alleged basis for subject-matter jurisdiction, should be dismissed

under Rule 12(b)(6), the entire complaint should be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction.

6. The Complaint also fails to allege a plausible breach of contract claim because it contains no factual support for the conclusory claims that Giblin breached her agreements with Lockton by soliciting other Lockton employees to leave Lockton and by "soliciting, or attempting to solicit, directly or indirectly," Lockton clients.

7. For the same reason Lockton's breach of contract claim does not meet the federal pleading standards, the Complaint also fails to allege a plausible claim for tortious interference.

8. The Complaint fails to allege a plausible claim for breach of fiduciary duty for three reasons:

- Negotiating with another employer for a new job and planning to compete against a current employer is not a breach of fiduciary duty; officers and employees are free to investigate and accept other opportunities.
- Workers have an inalienable right to quit their job. A fiduciary duty generally ends when a fiduciary leaves a company. Thus, Giblin did not owe Lockton a fiduciary duty after she terminated her employment with Lockton on November 29, 2022.
- Lockton relies on naked assertions that Giblin failed to return "Confidential Information" and took "Confidential Information" to use on behalf of a competitor. The facts do not support these allegations—which is highlighted by Lockton not even attempting to make factual assertions related to them.

WHEREFORE, for these reasons and the reasons outlined in Giblin's concurrently filed Suggestions in Support, Giblin respectfully requests that the Court dismiss Lockton's Complaint in its entirety.

Dated: January 31, 2023	Respectfully Submitted,

**BERKOWITZ OLIVER LLP**

*/s/ Stacey R. Gilman*
Stacey R. Gilman (MO Bar # 55690)
Blake P. Saffels (MO Bar # 73922)
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Telephone: (816) 561-7007
Facsimile: (816) 561-1888
sgilman@berkowitzoliver.com
bsaffels@berkowitzoliver.com

MORGAN LEWIS BOCKIUS LLP

Seth M. Gerber
(*pro hac vice* application pending)
Telephone: (310) 907-1000
Facsmile: (310) 907-1001
seth.gerber@morganlewis.com

***Attorneys for Defendant Sallie Giblin***

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of January 2023, the foregoing was filed via the Court's ECF system.

*/s/ Stacey R. Gilman*
***Attorney for Defendant Sallie Giblin***