**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| LOCKTON COMPANIES, LLC—PACIFIC SERIES, LOCKTON INVESTMENT ADVISORS, LLC, LOCKTON INVESTMENT SECURITIES, LLC f/k/a LOCKTON FINANCIAL ADVISORS, LLC, and LOCKTON PARTNERS, LLC, <br><br> Plaintiffs, <br> vs. <br><br> SALLIE F. GIBLIN, <br><br> Defendant. | Case No. 4:22-cv-00791-SRB |

# Defendant's Suggestions in Support of Defendant's Motion to Dismiss

# Oral Argument Requested

**Table of Contents**

I.     Introduction .............................................................................................................1

II.    The Court Should Dismiss Lockton's Claims Under Rule
12(b)(6) Because the Complaint Fails to Allege Facts
Sufficient to Show a Plausible Claim for Relief .....................................................3

III.   The Complaint Fails to State a Plausible Claim for
Misappropriation of Trade Secrets .........................................................................4

     A.    The Complaint Fails to Allege Sufficient Facts to State
a Plausible Claim of Misappropriation by Improper
Disclosure or Use ........................................................................................4

     B.    The Complaint Fails to Allege Sufficient Facts to State
a Plausible Claim of Misappropriation by Improper
Acquisition ................................................................................................10

     C.    The Complaint Fails to Sufficiently Allege the
Existence of Protectable Trade Secrets .....................................................13

           1.    The Complaint fails to identify the alleged trade
secrets with particularity ................................................................13

           2.    Client-owned information is not Lockton's trade
secret ...............................................................................................14

IV.   The Entire Action Should Be Dismissed for Lack of Subject-
Matter Jurisdiction ................................................................................................16

V.    Lockton Fails to Allege Plausible State-Law Claims .............................................16

     A.    The Complaint Fails to Allege a Plausible Breach of
Contract Claim ...........................................................................................16

     B.    The Complaint Fails to Allege a Plausible Claim for
Tortious Interference ..................................................................................17

     C.    The Complaint Fails to Allege a Plausible Claim for
Breach of Fiduciary Duty ...........................................................................17

VI.   Conclusion .............................................................................................................19

**Table of Authorities**

**U.S. Supreme Court Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................. *passim*

*Bailey v. Alabama*,
    219 U.S. 219, 242 (1911)..................................................................................................18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................. *passim*

*Pollock v. Williams*,
    322 U.S. 4, 17-18 (1944). .................................................................................................18

**Other Cases**

*AlterG, Inc. v. Boost Treadmills LLC*,
    388 F. Supp. 3d 1133 (N.D. Cal. 2019) ...........................................................................18

*Bancroft-Whitney Co. v. Glen*,
    64 Cal. 2d 327 (1964) .......................................................................................................17

*C. Pepper Logistics, LLC v. Lanter Delivery Systems, LLC*,
    No. 20-1444, 2021 WL 3725680 (E.D. Mo. Aug. 23, 2021) ..............................................8

*Calsoft Labs, Inc. v. Panchumarthi*,
    No. 19-4398, 2020 WL 512123 (N.D. Cal. Jan. 31, 2020).................................................18

*Case Properties Services, LLC v. Columbia Properties Phoenix,
    LP*, No. 17-3110, 2018 WL 4440509 (S.D.N.Y. Sept. 17,
    2018) .................................................................................................................................10

*Castel S.A. v. Wilson*,
    No. 19-9336, 2022 WL 504558 (C.D. Cal. Feb. 18, 2022) ..............................................18

*Cave Consulting Group, Inc. v. Truven Health Analytics Inc*.,
    No. 15-2177, 2017 WL 1436044 (N.D. Cal. Apr. 24, 2017)................................................9

*CGB Diversified Servs., Inc. v. Adams*,
    No. 20-2061, 2020 WL 1847733 (D. Kan. Apr. 13, 2020)...........................................11, 12

*Chubb INA Holdings, Inc. v. Chang*,
    No. 16-2354, 2017 WL 499682 (D.N.J. Feb. 2, 2017).......................................................6

Defendant's Motion to Dismiss
Case 4:22-cv-00791-SRB   Document 10   Filed 01/31/23   Page 3 of 26

*Crimson California Pipeline, L.P. v. Southern California Edison Co.*, No. 15-7036, 2016 WL 5340528 (C.D. Cal. Feb. 12, 2016) ................................................................................................8

*Cudahy Co. v. American Laboratories*,
313 F. Supp. 1339, 1346 (D. Neb. 1970) ....................................17, 18

*Delphix Corp. v. Actifo, Inc.*,
No. 13-4613, 2014 WL 4628490 (N.D. Cal. Mar. 19, 2014) ................7

*Delta Med. Sys. v. Mid-America Med. Sys., Inc.*,
331 Ill. App. 3d 777 (1st. Dist. 2002) ...............................................15

*Dewitt Stern Grp., Inc. v. Eisenberg*,
257 F. Supp. 3d 542 (S.D.N.Y. 2017), *aff'd,* 734 F. App'x 48 (2d Cir. 2018)....................................................................................15

*Dunn v. City of L.A.*,
No. 14-8327, 2017 WL 7726724 (C.D. Cal. Aug. 10, 2017) ...............8

*Elsevier Inc. v. Doctor Evidence, LLC*,
No. 17-5540, 2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ..................6

*Fox Sports Net N., L.L.C. v. Minnesota Twins P'ship*,
319 F.3d 329 (8th Cir. 2003) ............................................................13

*GAB Business Servs., Inc. v. Linsey & Newsom Claim Services, Inc.,* 83 Cal. App. 4th 409 (2000) (disapproved of on other grounds by *Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004))....................18

*Hong Kong Ucloudlink Network Technology Ltd. v. Simo Holdings, Inc.*, No. 18-5031, 2019 WL 4345912 (N.D. Cal. Sept. 12, 2019) ...............................................................................6

*In re Century Alum. Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ...........................................................7

*Injen Technology Co., Ltd. V. Kim*,
No. B200686, 2008 WL 2736899 (Cal. App. July 15, 2008)..............18

*Johnson v. Experian Information Solutions, Inc.*,
No. 18-0114, 2019 WL 951425 (E.D. Cal. Feb. 27, 2019) .................7

*Kaiser v. ABN AMRO Mortg. Group, Inc.*,
No. 13-2611, 2014 WL 1400724 (D. Minn. Apr. 10, 2014)................8

*Mahagama Comptronics, Inc. v. Perera*,
No. B173477, 2005 WL 2082983 (Cal. App. Aug. 30, 2005)............18

- iii -

*Menzel v. Scholastic, Inc.*,
  No. 17-5499, 2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) ...........................................7, 8

*Miller v. City of Los Angeles*,
  No. 13-5148, 2014 WL 12610195 (C.D. Cal. Aug. 7, 2014) ...............................................8

*Moss v. U.S. Secret Service*,
  572 F.3d 962, 969 (9th Cir. 2009) ......................................................................................6

*Nutrivita Laboratories, Inc. v. VBS Distribution*, *Inc.*,
  No. 13-1635, 2014 WL 12584303 (C.D. Cal. Jan. 9, 2014) ...............................................8

*Oakwood Laboratories, LLC v. Thanoo*,
  No. 17-5090, 2018 WL 2973384 (D.N.J. June 12, 2018) .........................................3, 9, 10

*Oliver v. SD-3C LLC*,
  No. 11-1260, 2016 WL 5950345 (N.D. Cal. Sep. 30, 2016) ...............................................7

*Packaging Corp. of America, Inc. v. Croner*,
  419 F. Supp. 3d 1059 (N.D. Ill. 2020) ......................................................................9, 11, 12

*PAI Corp. v. Integrated Science Solutions, Inc.*,
  No. 06-5349, 2009 WL 1106809 (N.D. Cal. Apr. 23, 2009) ..............................................18

*Pellerin v. Honeywell Int'l, Inc.*,
  877 F. Supp. 2d 983 (S.D. Cal. 2012) ...............................................................................10

*Prominence Advisors, Inc. v. Dalton*,
  No. 17-4369, 2017 WL 6988661 (N.D. Ill. Dec. 18, 2017) .........................................11, 12

*Rapp Ins. Agency, Inc., v. Baldree*,
  231 Ill. App. 3d 1038 (5th. Dist. 1992) .............................................................................15

*RPost Holdings, Inc. v. Goodmail Systems, Inc.*,
  No. 09-6668, 2010 WL 11596173 (C.D. Cal. Feb. 4, 2010) ...............................................6

*Simonyan v. Ally Fin. Inc.*,
  No. 12-8495, 2013 WL 45453 (C.D. Cal. Jan. 3, 2013) ......................................................8

*Solis v. City of Fresno*,
  No. 11-0053, 2012 WL 868681 (E.D. Cal. Mar. 13, 2012) .................................................7

*Veronica Foods Co. v. Ecklin*,
  No. 16-7223, 2017 WL 2806706 (N.D. Cal. June 29, 2017) ...............................................9

*Vivendi SA v. T-Mobile USA Inc.*,
  586 F.3d 689 (9th Cir. 2009) ..............................................................................................7

**Statutes**

Fed. R. Evid. 201 ................................................................................................................16

18 U.S.C. § 1836(b)(1) .........................................................................................................4

18 U.S.C. § 1839(5) ............................................................................................................10

18 U.S.C. § 1839(6)(A) .......................................................................................................10

RSMo § 417.453(1) .............................................................................................................10

RSMo § 417.453(2) ...............................................................................................................4

# I.    Introduction

Lockton reflexively filed this action to preclude Defendant Sallie Giblin from working for a competitor and to tarnish her professional reputation. The allegations of misappropriation of trade secrets are grossly deficient. Lockton has failed to distinguish its purported trade secrets from its claimed "Confidential Information" and failed to allege facts showing that Giblin improperly acquired, used, or disclosed any trade secrets. The Complaint conflates the broadly defined contractual term "Confidential Information" with the statutorily defined term "trade secrets" in the Defend Trade Secrets Act (DTSA) and the Missouri Uniform Trade Secrets Act (MUTSA). The only thing Lockton alleges is the unremarkable fact that over the many years that Giblin worked in Lockton's West Coast business unit in the Pacific Series, including years during which Giblin served as the president of the Pacific Series, she *accessed* "Confidential Information" and undefined and unspecified trade secrets in the course of performing her work obligations to Lockton. That is *not* misappropriation under the law. Lockton's remaining claims are also specious and conclusory—indeed, Lockton has not alleged that any employees or clients were improperly solicited by Giblin or have been lost due to wrongful conduct. Not one.

Giblin was a trailblazer for women at Lockton. After she started at Lockton in 2006, Giblin quickly became a highly successful producer and earned leadership positions in Lockton's Pacific Series. She was the first woman to lead a Lockton office. But Giblin ultimately could not overcome the misogynistic attitudes and toxic work environment at Lockton—which are especially prevalent within the Pacific Series. After challenging male Lockton executives about matters of company direction and policy, Giblin became the target of discrimination, harassment, and retaliation. Lockton cut the support staff for her book of business. Her clients complained and she lost some accounts. Lockton removed her from the Pacific Series' Executive Committee. Because of Lockton's retaliatory acts and toxic environment, Giblin decided Lockton would not become the place she hoped it could be, despite her dedicated efforts to improve the company's culture. Thus, Giblin decided to move on from Lockton. Although Lockton executives promised Giblin they would help her transition to a new job if that was what she wanted, Lockton continued its pattern

Defendant's Motion to Dismiss

of retaliating against her by filing this lawsuit after Giblin resigned and went to work for a competitor. But Lockton's Complaint fails to satisfy federal pleading standards.

Lockton alleges this Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because it has alleged a count for misappropriation under the DTSA. However, this count—which also seeks relief under the MUTSA—should be dismissed under Rule 12(b)(6) for the following reasons:

- The Complaint fails to allege *facts* showing Giblin has misused or wrongly disclosed any purported trade secrets. The Complaint only makes conclusory allegations and "naked assertions" of misuse or wrongful disclosure and is barren of any "factual enhancements" supporting the assertions. This is grossly inadequate under the pleading standards established by the U.S. Supreme Court.

- The Complaint fails to allege *facts* showing any improper acquisition of trade secrets. All Lockton alleges is that Giblin had access to purported Lockton trade secrets through her senior position at Lockton. Merely *accessing* information while working for the company does not constitute improper *acquisition* within the meaning of the DTSA (or MUTSA).

- The Complaint fails to identify Lockton's asserted trade secrets. The Complaint conflates Lockton's alleged "Confidential Information" with "trade secrets," and by treating them as terms with partial or fully overlapping meanings, Lockton fails to allege it owns "trade secrets" and its pleading is hopelessly confusing and ambiguous.

- The Complaint asserts that information concerning the insurance policies of Lockton's clients constitutes Lockton's trade secrets, even though the policyholders are free to share their policy information with anyone at any time. Numerous courts have held such information—which is readily accessible through proper means—is not a trade secret of the brokerage firm because it belongs to the clients.

Put simply, Lockton's misappropriation claim is baseless and should be dismissed, and the dismissal of the DTSA claim eliminates the Court's subject-matter jurisdiction, warranting dismissal of the entire action.

Defendant's Motion to Dismiss

Lockton's Complaint also fails to properly allege its state-law contract claim and its tort claims for tortious interference and breach of fiduciary duty. The Complaint is devoid of factual allegations plausibly showing Giblin has breached her Lockton agreements by soliciting employees or clients. Lockton fails to identify any employees or clients who have been lost due to wrongful conduct by Giblin. The tortious interference claim similarly relies on vague, conclusory allegations of improper solicitation of Lockton clients. And Lockton's breach of duty claim is predicated on conclusory and false assertions that Giblin remained a Lockton officer and employee for 30 days after she resigned "effective immediately." Contrary to these conclusory allegations, Giblin's resignation was effective immediately and she owed no duties after her resignation.

## II.    The Court Should Dismiss Lockton's Claims Under Rule 12(b)(6) Because the Complaint Fails to Allege Facts Sufficient to Show a Plausible Claim for Relief

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a claim that "fail[s] to state a claim upon which relief can be granted." In *Ashcroft v. Iqbal,* the U.S. Supreme Court reaffirmed its ruling in *Bell Atl. Corp. v. Twombly* that to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[1] Under the *Twombly/Iqbal* standard, a court should not "accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations."[2] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' … Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[3]

Despite repeated use of the phrases "confidential information" and "trade secrets" in the Complaint, the best that Lockton can muster about anything ***wrongful*** on this entire issue is that "[o]n information and belief, efforts by Giblin to misappropriate Plaintiffs' Confidential

---

[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[2] *Oakwood Laboratories, LLC v. Thanoo*, No. 17-5090, 2018 WL 2973384, at *5 (D.N.J. June 12, 2018).

[3] *Ashcroft*, 556 U.S. at 678.

Defendant's Motion to Dismiss

Information and trade secrets are well underway."[4] The balance of the Complaint is laced with quotes from agreements referencing "Confidential Information" and bromides about hypothetical worst-case scenarios devoid of facts *if* one conjured actual misuse. Abstract allegations like these are not the stuff of DTSA or MUTSA claims. Under these pleading standards, this Court should dismiss Lockton's claims for misappropriation, breach of contract, tortious interference, and breach of fiduciary duty. There is nothing plausible alleged.

## III.   The Complaint Fails to State a Plausible Claim for Misappropriation of Trade Secrets

Lockton's fourth count is for alleged trade secret misappropriation under the federal DTSA and the MUTSA. The elements for a claim under the DTSA are (1) the existence of a trade secret, (2) misappropriation of the trade secret by another, and (3) the trade secret's relation to a good or service used or intended for use in interstate or foreign commerce.[5] The DTSA defines "misappropriation" as the "*acquisition* of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired *by improper means*" or the "*disclosure or use* of a trade secret of another without express or implied consent" by a person who "used improper means to acquire knowledge of the trade secret."[6] The elements of a claim and the definition of misappropriation under the MUTSA are very similar to the elements and definition of misappropriation applicable for a DTSA claim.[7]

### A.   The Complaint Fails to Allege Sufficient Facts to State a Plausible Claim of Misappropriation by Improper Disclosure or Use

The Complaint fails to recite facts indicating Giblin has disclosed or used trade secrets that were acquired through improper means. Instead, the Complaint only "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[8] And, to make matters even worse for Lockton, these

---

[4] Complaint ¶ 99.

[5] 18 U.S.C. § 1836(b)(1).

[6] 18 U.S.C. § 1839(5) (emphasis added).

[7] RSMo § 417.453(2).

[8] *Ashcroft*, 556 U.S. at 678.

Defendant's Motion to Dismiss

"naked assertions" are made on "information and belief." Specifically:

- In paragraph 99, the Complaint alleges, on information and belief, that "efforts by Giblin to misappropriate Plaintiffs' Confidential Information and trade secrets are well underway." This is just a "naked assertion." The Complaint contains no "further factual enhancements" that support the claim that misappropriation is "well underway"—whatever that means.

- In paragraphs 116 and 125, the Complaint alleges, on information and belief, that Giblin has taken "Plaintiffs' Confidential Information for use on behalf of a competitor." This is a "naked assertion" without any "further factual enhancements" showing how Giblin has used or disclosed information, and what information she purportedly used or disclosed.

- In paragraph 136, the Complaint alleges, on information and belief, that "Giblin knowingly, and with an evil motive or reckless indifference to the rights of Plaintiffs, misappropriated Lockton's Confidential Information in recent weeks, despite planning to depart Lockton, in order to use such Confidential Information on behalf of Alliant." This is an asserted legal conclusion of the ultimate fact of misappropriation. There are no "further factual enhancements" supporting the asserted conclusion of "misappropriation" by Giblin or the use of "Confidential Information" on behalf of Alliant.

- In paragraph 137, the Complaint alleges, on information and belief, that "Giblin is using, or intends to use, this Confidential Information to solicit business" from Lockton clients and to "solicit Lockton's Producer Members, Producer Partners, and employees" to leave Lockton. This is yet another "naked assertion." There are no "further factual enhancements" explaining what information Giblin allegedly used, or how Giblin is using the information to solicit customers or Lockton employees. Indeed, this allegation admits Lockton does not know whether Giblin has used trade secrets by alleging in the alternative that Giblin is "intending to use" the trade secrets.

Defendant's Motion to Dismiss

Mere "intent" to misappropriate is not actionable.

Such conclusory allegations cannot survive a motion to dismiss. A complaint "must include 'factual enhancements' and not just conclusory statements."[9] Indeed, "for a complaint to survive a motion to dismiss, the ***non-conclusory 'factual content***,' and ***reasonable inferences from that content***, must be plausibly suggestive of a claim entitling the plaintiff to relief."[10] In *RPost Holdings, Inc. v. Goodmail Systems, Inc.*, the court granted a motion to dismiss because the complaint at issue presented a "classic *Twombly* situation: Plaintiff has only alleged labels and conclusions, not facts."[11]

At most, Lockton's allegations rely on an ***inference*** that it is ***possible*** that Giblin has disclosed or used purported Lockton trade secrets. However, as the U.S. Supreme Court declared in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[12] That is the case here: Lockton's allegations, at most, permit the court to infer no more than the "mere possibility" of misconduct by Giblin, and that is not enough. In *Hong Kong Ucloudlink Network Technology Ltd. v. Simo Holdings, Inc.*, the court dismissed counterclaims where the "allegations are *consistent* with there being a conspiracy, but they do not establish a *plausible* allegation of a conspiracy."[13] Nowhere in its complaint does Lockton

---

[9] *Chubb INA Holdings, Inc. v. Chang*, No. 16-2354, 2017 WL 499682, at *5 (D.N.J. Feb. 2, 2017). *See also Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-5540, 2018 WL 557906, at *2 (S.D.N.Y. Jan. 23, 2018) (while the court "accepts as true all well-pled factual allegations," it "does not credit 'mere conclusory statements' or 'threadbare recitals of the elements of a cause of action.'").

[10] *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (emphasis added).

[11] *RPost Holdings, Inc. v. Goodmail Systems, Inc.*, No. 09-6668, 2010 WL 11596173, at *1 (C.D. Cal. Feb. 4, 2010).

[12] *Ashcroft*, 556 U.S. at 679 (2009) (quoting F.R.C.P. 8(a)(2). *See also id.* at 678 (2009) ("The plausibility standard … ***asks for more than a sheer possibility*** that a defendant has acted unlawfully.") (emphasis added); *Elsevier*, 2018 WL 557906 at *2 ("If the Court can infer no more than the mere possibility of misconduct from the factual averments—in other words, if the well-pled allegations of the complaint have not 'nudged [plaintiff's] claims across the line from conceivable to plausible'—dismissal is appropriate.").

[13] *Hong Kong Ucloudlink Network Technology Ltd. v. Simo Holdings, Inc.*, No. 18-5031, 2019 WL 4345912, at *6 (N.D. Cal. Sept. 12, 2019) (italics in original).

Defendant's Motion to Dismiss

surmount the "mere possibility" threshold, *i.e.*: "When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*."[14]

Furthermore, all of Lockton's substantive allegations of misappropriation (and improper solicitation of Lockton clients or employees) are made on "information and belief."[15] "In the post-*Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim."[16] As the court stated in *Oliver v. SD-3C LLC*, "Naked assertions made upon information and belief and 'devoid of further factual enhancement' are insufficient to state a claim" under *Iqbal* and *Twombly*.[17] Indeed, an allegation made only on "information and belief" "creates a further inference that plaintiff likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree."[18] Thus, for example, in *Johnson v. Experian Information Solutions, Inc.*, the court granted a 12(b)(6) motion to dismiss because the "Plaintiff's complaint, rather than providing any specific factual allegations, rests entirely on conclusory allegations based upon plaintiff's 'information and belief,' which are insufficient to state a claim for relief."[19] And in *Menzel v. Scholastic, Inc.*, in explaining its basis for granting a motion to dismiss, the court stated that "while facts may be alleged upon information and belief, that does not mean that conclusory allegations

---

[14] *In re Century Alum. Co. Sec. Litig.,* 729 F.3d 1104, 1108 (9th Cir. 2013) (internal citations omitted).

[15] *See* Complaint ¶¶ 11, 84, 98, 99, 102, 103, 116(c), 116(d), 116(e), 120, 125(e), 125(f), 125(g), 136, 137.

[16] *Solis v. City of Fresno*, No. 11-0053, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012) (granting motion to dismiss). *See also Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694 (9th Cir. 2009) (finding allegations based "upon information and belief" insufficient where no further facts were alleged).

[17] *Oliver v. SD-3C LLC*, No. 11-1260, 2016 WL 5950345, at *11 (N.D. Cal. Sep. 30, 2016).

[18] *Delphix Corp. v. Actifo, Inc.*, No. 13-4613, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014).

[19] *Johnson v. Experian Information Solutions, Inc.*, No. 18-0114, 2019 WL 951425, at *2 (E.D. Cal. Feb. 27, 2019).

Defendant's Motion to Dismiss

are permitted. A conclusory allegation based on information and belief remains insufficient under *Iqbal/Twombly*."[20] In *Twombly* itself, the U.S. Supreme Court declined to accept as true conclusory allegations "upon information and belief" of a conspiracy, without sufficient facts to make that assertion plausible.[21]

Federal courts have dismissed cases based on similarly flimsy and speculative allegations. For example:

- ▪ In *C. Pepper Logistics, LLC v. Lanter Delivery Systems, LLC*, the court dismissed a DTSA claim because the plaintiff's factual allegations in support of the elements of the claim were "insufficient," "scant," "vague and speculative," and made on "information and belief." The court found the allegations did not "clear the 'plausibility' hurdle required by Rule 8(a)."[22]

---

[20] *Menzel v. Scholastic, Inc.*, No. 17-5499, 2018 WL 1400386, at *3 (N.D. Cal. Mar. 19, 2018).

[21] *Twombly*, 550 U.S. at 551, 557. *See also, e.g., C. Pepper Logistics, LLC v. Lanter Delivery Systems, LLC*, No. 20-1444, 2021 WL 3725680, at *8-9 (E.D. Mo. Aug. 23, 2021) (finding insufficient allegations made on "information and belief" as "vague and speculative"); *Hyun Hwa Chung v. Seterus, Inc.*, No. 17-0541, 2017 WL 3583113, at *4 (S.D. Cal. Aug. 18, 2017) (court granted motion to dismiss in part because the plaintiff's allegations regarding failure to comply with a statute were "made 'on information and belief' and consist only of legal conclusions … and thus fail *Twombly/Iqbal*"); *Dunn v. City of L.A.*, No. 14-8327, 2017 WL 7726724, at *2 n.5 (C.D. Cal. Aug. 10, 2017) (holding "conclusory allegations made upon 'information and belief' are insufficient to state a claim"); *Crimson California Pipeline, L.P. v. Southern California Edison Co.*, No. 15-7036, 2016 WL 5340528, at *3 (C.D. Cal. Feb. 12, 2016) (in granting motion to dismiss, court stated: "If the factual allegations based on 'information and belief' are made without further facts, the allegations do not survive a motion to dismiss."); *Miller v. City of Los Angeles*, No. 13-5148, 2014 WL 12610195, at *5 (C.D. Cal. Aug. 7, 2014) (in granting motion to dismiss with prejudice, court stated: "The Court recognizes that 'information and belief' pleading is allowed—indeed, necessary at times—but the words are not talismanic, and a plaintiff cannot avoid Rule 12 simply by slapping the 'information and belief' label onto speculative or conclusory allegations."); *Kaiser v. ABN AMRO Mortg. Group, Inc.*, No. 13-2611, 2014 WL 1400724, at *2 (D. Minn. Apr. 10, 2014) (the "allegations 'upon information and belief' fail, as they are entirely speculative, not adequately pleaded under *Iqbal* and *Twombly* and wholly insufficient to state a claim"); *Nutrivita Laboratories, Inc. v. VBS Distribution, Inc.*, No. 13-1635, 2014 WL 12584303, at *2 (C.D. Cal. Jan. 9, 2014) (dismissing claim against defendant where lone allegation was made on information and belief and was "unsupported by any factual allegations, or even by any facts upon which Nutrivita's belief is based"); *Simonyan v. Ally Fin. Inc.*, No. 12-8495, 2013 WL 45453, at *2 (C.D. Cal. Jan. 3, 2013) (noting that "factual allegations ... based on 'information and belief' and contain[ing] nothing more than a rote recitation of the required elements of each respective claim ... fall well short of the requirements set forth in *Iqbal*").

[22] *C. Pepper Logistics,* 2021 WL 3725680, at *8-9.

---

Defendant's Motion to Dismiss

- In *Cave Consulting Group, Inc. v. Truven Health Analytics Inc*., the court dismissed a DTSA claim where the plaintiff only generally alleged on information and belief that the defendant had "used" purported trade secrets, and failed to make any "specific allegations that defendant used the alleged trade secrets."[23]

- In *Packaging Corp. of America, Inc. v. Croner*, the court dismissed federal and state misappropriation claims on the ground that the "complaint provides no additional factual support for this assertion" that the defendant had used or disclosed trade secrets. The court stated: "even if the Court infers Croner's possession of the information in question, mere possession of trade secrets does not suffice to plausibly allege disclosure or use of those trade secrets, even when considered in conjunction with solicitations of former clients."[24]

- In *Veronica Foods Co. v. Ecklin*, the court dismissed both federal and state trade secrets claims because the plaintiff's "allegations of the particular trade secrets that Defendants misused" were "largely conclusory—an everything-but-the-kitchen-sink assertion that Defendants 'have made improper and unauthorized use'" of the plaintiff's "Customer List, Supplier List, and Confidential Business Information" to solicit customers. The court explained that such "'naked assertions' and 'conclusions' are not the sort of factual allegations that the Court must accept as true at the pleading stage."[25]

- In *Oakwood Laboratories, LLC v. Thanoo*, the court dismissed claims asserted under both the DTSA and the New Jersey Trade Secrets Act because the plaintiff only offered "conclusory allegations" that failed to "provide sufficient support to the

---

[23] *Cave Consulting Group, Inc. v. Truven Health Analytics Inc*., No. 15-2177, 2017 WL 1436044, at *5 (N.D. Cal. Apr. 24, 2017).

[24] *Packaging Corp. of America, Inc. v. Croner*, 419 F. Supp. 3d 1059, 1066 (N.D. Ill. 2020).

[25] *Veronica Foods Co. v. Ecklin*, No. 16-7223, 2017 WL 2806706, at *14 (N.D. Cal. June 29, 2017).

Defendant's Motion to Dismiss

claims set forth."[26]

- In *Case Properties Services, LLC v. Columbia Properties Phoenix, LP*, the court dismissed the plaintiff's DTSA claim because the allegations were "conclusory."[27]

- In *Pellerin v. Honeywell Int'l, Inc.*, the court dismissed a misappropriation counterclaim because "Honeywell does not allege any facts in support of the legal conclusion that Plaintiffs 'used and/or disclosed' and 'acquired and/or used' Honeywell's trade secrets or confidential information."[28]

Like the plaintiffs in these cases, Lockton has attempted to use conclusory and speculative allegations, primarily made "upon information and belief," in an effort to gloss over its deficient factual allegations. This is insufficient under *Twombly/Iqbal*, and the Court should dismiss Lockton's trade secret claim.

**B.      The Complaint Fails to Allege Sufficient Facts to State a Plausible Claim of Misappropriation by Improper Acquisition**

Under the DTSA and MUTSA, acquisition of trade secret information is only actionable if the defendant used "improper means," which both the DTSA and MUTSA define as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."[29] Lockton's Complaint fails to allege Giblin acquired any purported trade secrets by improper means. Rather, the Complaint alleges Giblin acquired Lockton's information in the normal course of business because, as a producer member and producer partner at Lockton, she had "access to Confidential Information from Lockton."[30] Under

---

[26] *Oakwood Laboratories,* 2018 WL 2973384, at *5-6.

[27] *Case Properties Services, LLC v. Columbia Properties Phoenix, LP*, No. 17-3110, 2018 WL 4440509, at *5 (S.D.N.Y. Sept. 17, 2018).

[28] *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012).

[29] 18 U.S.C. § 1839(6)(A); RSMo § 417.453(1).

[30] Complaint ¶ 134. *See also id.* ¶ 44, 131 (alleging that Giblin, while at Lockton, had access to "important Confidential Information about Lockton's customers, including, without limitation, the customers' insurance needs and preferences, risk appetite, pricing and coverage requirements, present premiums, deductibles, collateral levels, commission arrangements, renewal dates, loss history, levels of

Defendant's Motion to Dismiss

Lockton's proposed theory, any employee with access to "Confidential Information" who leaves Lockton under any circumstances has improperly acquired "trade secrets." This is an absurd result. The improper acquisition element of a trade secret claim cannot and should not be interpreted this broadly, and Lockton improperly conflates Confidential Information with trade secrets.

Acquiring trade secret information through normal employment is not "improper" acquisition. In *Packaging Corp. of America, Inc. v. Croner*, the court held that allegations similar to Lockton's ***did not*** constitute misappropriation by improper acquisition. The court explained:

> "Here, PCA does not plausibly allege misappropriation by Croner. The complaint itself makes plain that rather than acquiring the alleged trade secrets by improper means, Croner acquired them through the normal course of his employment: 'In order to perform his job responsibilities, Croner was given access to confidential information and trade secrets' that 'PCA paid Croner to acquire, accumulate, and assemble over years.'"[31]

Similarly, in *Prominence Advisors, Inc. v. Dalton*, the court dismissed a misappropriation claim where Prominence alleged, as Lockton's Complaint alleges, that the defendant "acquired the information while performing his official duties while employed by Prominence." The court noted that improper means "requires alleging 'theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means,'" and "Prominence does not allege any of these, or anything similar, as the means through which Dalton acquired the hard drive or DropBox access; therefore, Prominence does not adequately allege misappropriation through Improper Acquisition."[32]

And in *CGB Diversified Servs., Inc. v. Adams*, the court dismissed a misappropriation claim where plaintiff CGB alleged that defendant Adams transferred company files from his "work laptop" to "external memory devices" while Adams was still working for CGB. The court stated: "The fact that Adams accessed files that he apparently had access to as part of his job … before he

---

satisfaction, and other information that would be greatly beneficial to competitors in soliciting such customers.").

[31] *Packaging Corp. of America, Inc. v. Croner*, 419 F. Supp. 3d 1059, 1066 (N.D. Ill. 2020).

[32] *Prominence Advisors, Inc. v. Dalton*, No. 17-4369, 2017 WL 6988661, at *4 (N.D. Ill. Dec. 18, 2017).

Defendant's Motion to Dismiss

resigned does not give rise to a reasonable inference of misappropriation."[33] The court went on:

> "all CGB alleges in the complaint is that Adams had access to trade secrets as part of his employment with CGB, that he accessed that information, and that he went to work for a competitor. *To infer wrongdoing from those facts would throw the plausibility standard out the window*."[34]

Under the holdings and reasoning of cases such as *Packing Corp. of America, Prominence Advisors,* and *CGB Diversified Servs.*, Lockton's Complaint fails to plead improper acquisition.

Given that there was no improper acquisition of purported trade secrets, Lockton falls back to allegations that Giblin remained in possession of "Lockton property and data" when she joined Alliant on the same day she resigned from Lockton.[35] The Complaint further alleges Giblin has failed "to return Plaintiffs' Confidential Information."[36] Lockton bases these allegations on Giblin's resignation email, in which Giblin stated she had hard-copy documents and perhaps electronic files in her possession that *might* contain Lockton "Confidential Information."[37] However, in *Packaging Corp. of America*, the court rejected this argument, stating: "Even if Croner did not return the information, as Plaintiff alleges, the failure to return lawfully acquired information does not constitute 'misappropriation' of that information under the DTSA."[38]

Furthermore, Giblin's resignation email, which Lockton attached to its Complaint as Exhibit

---

[33] *CGB Diversified Servs., Inc. v. Adams*, No. 20-2061, 2020 WL 1847733, at *3 (D. Kan. Apr. 13, 2020) (emphasis added).

[34] *CGB Diversified Servs.,* 2020 WL 1847733, at *4.

[35] Complaint ¶ 101. *See also id.* ¶¶ 11, 100 (alleging Giblin possessed purported Lockton trade secrets after her resignation and after she began work at Alliant). Lockton's assertion in paragraphs 11 and 100 that Giblin accessed her Lockton email account on the same day she began work at Alliant and that she was improperly "wearing two hats" on the same day is false: Giblin resigned from Lockton on November 29 and did not start work at Alliant until the next day—November 30. Furthermore, Giblin's resignation email, attached as Exhibit E to the Complaint (Dkt. No. 1-5), explained that she used her Lockton email account to inform Lockton of her resignation because of her "awareness that communications from my personal e-mail address would not timely reach you (because of spam filters)," and that she considered the "communication to be personal in nature."

[36] Complaint ¶¶ 116, 125.

[37] Complaint ¶ 101.

[38] *Packaging Corp.*, 419 F. Supp. 3d at 1066.

Defendant's Motion to Dismiss

E,[39] contradicts Lockton's allegations of **improper** acquisition. In her email, Giblin made it clear that she wanted to return all property and information in her possession as soon as possible and that she needed "guidance" from Lockton as to how to best accomplish that, and that she was subjecting electronic devices and files to a remediation process. Giblin wrote:

> "I would like to arrange to **immediately return** the Lockton 'Property' (as defined in my agreements with Lockton) in my possession … .

> "I would also like to arrange for the **immediate return** to Lockton of any of Lockton's allegedly 'Confidential Information' (as defined in my agreements with Lockton) that I may currently possess in electronic form as a result of my performing work for Lockton consistent with my obligations under my agreements with Lockton. **Please have someone contact me at their earliest opportunity to provide me with guidance** as to how I should return any materials that I may still have in my possession.

> "I **will not access, use, or disclose any of Lockton's allegedly 'Confidential Information' from this point forward** (and will be logging out, immediately after sending this letter, of all of my Lockton digital accounts, including email), and I understand that my new employer **will perform a remediation process as part of my onboarding to ensure that I no longer possess any of Lockton's allegedly 'Confidential Information**.' Please have someone contact me to effectuate a smooth transition."[40]

The entirety of Giblin's resignation email, rather than the cherry-picked portions Lockton mentions in its Complaint, establishes that Giblin did not **improperly access** Lockton's purported trade secrets after her resignation. And the Complaint fails to allege any facts suggesting otherwise.

### C.    The Complaint Fails to Sufficiently Allege the Existence of Protectable Trade Secrets

### 1.    The Complaint fails to identify the alleged trade secrets with particularity

"In a suit for misappropriation of trade secrets, the plaintiff must specify what information it seeks to protect."[41] Here, Lockton's Complaint provides inconsistent descriptions of its purported trade secrets. In paragraph 44, Lockton cites the definition of "Confidential Information" recited in Giblin's agreements with Lockton. This definition parrots the words "trade secrets" (without

---

[39] Complaint ¶ 92.

[40] Complaint, Ex. E (Dkt. No. 1-5).

[41] *Fox Sports Net N., L.L.C. v. Minnesota Twins P'ship*, 319 F.3d 329, 335 (8th Cir. 2003).

Defendant's Motion to Dismiss

defining what those trade secrets are[42]) as just one of many other broad, sweeping categories of "Confidential Information," signaling that Lockton's undefined "trade secrets" are a subset of a broader class of "Confidential Information."[43] In other words, saying something is "Confidential Information" does not mean it is a protectable "trade secret." This understanding is reinforced by the many references in the Complaint to "Confidential Information" and "trade secrets" as separate classes of information.[44] However, in paragraph 132, Lockton tries to sweep away the distinction between "Confidential Information" and "trade secrets" by alleging—in conflict with the rest of its Complaint and the contracts attached to it—that "Lockton's Confidential Information constitutes trade secrets." Due to its frustrating inconsistency in describing its "Confidential Information" and "trade secrets," Lockton fails to identify the borders of the purported trade secret information—which is required at this pleading stage.

## 2. Client-owned information is not Lockton's trade secret

The Complaint alleges in paragraph 44 that the asserted trade secrets include "important Confidential Information about Lockton's customers" such as "the customers' insurance needs and preferences, risk appetite, pricing and coverage requirements, present premiums, deductibles, collateral levels, commission arrangements, renewal dates, loss history, levels of satisfaction, and other information that would be greatly beneficial to competitors in soliciting such customers."[45]

---

[42] Lockton's failure to define "trade secrets" shows that Lockton has not taken reasonable measures to protect them. If Lockton never instructed its employees about how to identify, classify, and protect trade secrets, Lockton cannot establish the elements necessary to show it has taken reasonable measures under the circumstances to maintain the secrecy of the trade secrets.

[43] Complaint ¶¶ 44 n.3, 129.

[44] *See* Complaint ¶ 4 (referring to "Plaintiffs' confidential information, trade secrets, …"); *id.* ¶ 13 (referring to "Lockton's Confidential Information and trade secrets"); *id.* ¶ 45 (referring to "Lockton's trade secrets and other Confidential Information"); *id.* ¶¶ 65, 67 (referring to "information related to Customer Accounts and trade secrets"); *id.* ¶ 83 (referring to "trade secrets and confidential information"); *id.* ¶ 84 (referring to "trade secrets, and other Confidential Information"); *id.* ¶ 99 (referring to "Confidential Information and trade secrets"); *id.* ¶ 101 (referring to "Lockton's Confidential Information and trade secrets"); *id.* ¶ 104 (referring to "Lockton's trade secrets and Confidential Information"); *id.* ¶ 106 (referring to "Confidential Information and trade secrets concerning Customer Accounts"); *id.* ¶ 146(f) (referring to "trade secrets and other confidential and proprietary information").

[45] Complaint ¶¶ 44, 131.

Defendant's Motion to Dismiss

This description fails to "separate" the asserted trade secret information from information that is "general knowledge in the trade or of special persons who are skilled in the trade."[46]

Furthermore, information about customers **belongs to the customer**, not the brokerage firm, and therefore the brokerage firm cannot claim as its own trade secrets information it possesses about its customers. Clients own their insurance policies and clients are free to share all of their policy information—*e.g.,* policy numbers, coverages, carriers, expiration and renewal dates, rates—with anyone, including prospective brokers, at any time. Similarly, clients are free to share their needs, preferences, risk tolerance, and financial history with prospective brokers or anyone else. Once a client executes a broker-of-record letter to change brokerages, the new broker can also obtain policy information directly from carriers who issue policies. Recognizing this, courts have held that categories of customer information such as those alleged by Lockton to be its trade secrets are ***not*** trade secrets:

- In *Dewitt Stern Grp., Inc. v. Eisenberg,* the court ruled that "insurance account information such as policy information, expiration dates, terms and conditions, and pricing all belong to clients, not brokers," and "such information can be shared by clients with competing brokers."[47]

- In *Delta Med. Sys. v. Mid-America Med. Sys., Inc*., the court found that customer data, including pricing, service history, key decision-makers, and customer contract terms, were not trade secrets.[48]

- In *Rapp Ins. Agency, Inc., v. Baldree*, the court declined to issue an injunction because insurance policy information can be obtained from clients and therefore is not a protectable trade secret.[49]

---

[46] *Streck, Inc. v. Ryan*, 2022 WL 2466798, at *12 (D. Neb. Feb. 4, 2022), report and recommendation adopted, 2022 WL 4591884 (D. Neb. Sept. 30, 2022).

[47] *Dewitt Stern Grp., Inc. v. Eisenberg,* 257 F. Supp. 3d 542 (S.D.N.Y. 2017), *aff'd,* 734 F. App'x 48 (2d Cir. 2018).

[48] *Delta Med. Sys. v. Mid-America Med. Sys., Inc*., 331 Ill. App. 3d 777, 791-93 (1st. Dist. 2002).

[49] *Rapp Ins. Agency, Inc., v. Baldree*, 231 Ill. App. 3d 1038, 1043 (5th. Dist. 1992).

Defendant's Motion to Dismiss

In addition, much of the information about Giblin's clients that Lockton claims is trade secret information is publicly available. As Lockton alleges in its Complaint, Giblin specializes in employee benefits.[50] Under ERISA, many (if not most) companies must annually file a Form 5500 with the Department of Labor disclosing their retirement and other welfare benefit plans. These forms *publicly* disclose numerous plan details, including the nature and starting date of the plan, the number of participants, the plan sponsor and administrator, any person or entity receiving commissions for the plan, and information regarding the funding of the plan and provided benefits.[51] This Court has taken judicial notice of these forms, their availability, and the wealth of information contained within them, and is respectfully requested to do so again.[52] Thus, Lockton cannot claim any such information as a trade secret or even as "Confidential Information."

## IV. The Entire Action Should Be Dismissed for Lack of Subject-Matter Jurisdiction

As alleged in paragraph 19 of the Complaint, the only basis for subject-matter jurisdiction is Lockton's assertion of a federal DTSA claim. Because Lockton has no plausible claim for misappropriation under the DTSA, the entire action should be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction.

## V. Lockton Fails to Allege Plausible State-Law Claims

Should this Court reach the issue of whether Lockton's non-federal claims satisfy the federal pleading standards, it should find those claims are deficient. They fail to put Giblin on even minimal notice of the allegations being made against her.

## A. The Complaint Fails to Allege a Plausible Breach of Contract Claim

In Lockton's first count for breach of contract, Lockton alleges, on information and belief,

---

[50] *See* Complaint ¶¶ 5, 18, 94 (alleging Giblin "specializes in employee benefits").

[51] *See, e.g.*, https://www.dol.gov/agencies/ebsa/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500 (last visited January 2023) (explaining and providing information, forms, and resources regarding the Form 5500 Series).

[52] *See* Fed. R. Evid. 201; 10.27.22 Order, Docket No. 27, in the case styled as *Lockton Companies, LLC—Pacific Series, et al. v. Kaufman*, No. 22-0462.

Defendant's Motion to Dismiss

that Giblin has breached her agreements with Lockton by soliciting other Lockton employees to leave Lockton and by "soliciting, or attempting to solicit, directly or indirectly," Lockton clients.[53] The Complaint is devoid of any "factual enhancements" supporting these allegations. The Complaint does not identify any employee or client that Giblin has solicited or attempted to solicit. These bare allegations, without any corresponding facts, are insufficient, and Lockton's breach of contract claim should be dismissed.

## B. The Complaint Fails to Allege a Plausible Claim for Tortious Interference

Lockton's second count for tortious interference is based on the allegation, made on information and belief, that Giblin solicited Lockton clients and other Lockton employees.[54] The Complaint is devoid of any factual allegations that support this "naked assertion." As discussed above in connection with Lockton's misappropriation claim, Lockton's barebone and speculative assertions, made on information and belief, do not satisfy the *Twombly/Iqbal* pleading standard.

## C. The Complaint Fails to Allege a Plausible Claim for Breach of Fiduciary Duty

Each of Lockton's allegations underlying its third count for breach of fiduciary duty fails to show Lockton has a plausible claim. First, Lockton's allegation that Giblin violated her fiduciary duties by "[e]ngaging in negotiations with Alliant that created incentives for divided loyalty" and by "[c]oncealing from Lockton that she had accepted an offer to join Alliant"[55] fail as a matter of law. Negotiating with another employer for a new job and planning to go into competition against a current employer is not a breach of fiduciary duty; officers and employees are free to investigate and accept other opportunities.[56]

---

[53] Complaint ¶ 116. *See also id.* at ¶¶ 102, 103.

[54] Complaint ¶ 125(a).

[55] Complaint ¶ 125(a).

[56] *Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 345-47 (1964) (noting "the right of an employee (or an officer of a corporation) to seek a better job" and stating the "mere fact that the officer makes preparations to compete before he resigns his office is not sufficient to constitute a breach of duty."). *See also Cudahy Co. v. American Laboratories* 313 F. Supp. 1339, 1346 (D. Neb. 1970) ("'The mere planning, without more is not a breach of an employee's duty of loyalty and good faith to his employer.' … Admittedly, the mere decision to enter into competition will eventually prove harmful to the former employer but because of the

Defendant's Motion to Dismiss

Second, Lockton's allegations that Giblin resigned from Lockton without giving 30-days' notice, that Giblin remained a Lockton employee for 30 days after she submitted her notice of resignation, and that during that 30-day period she competed against Lockton by soliciting Lockton clients and customers in violation of her fiduciary duties,[57] are also legally insufficient to state a claim. Lockton relies on the legal fiction that Giblin remained a Lockton employee beyond November 29, 2022, and continued to be bound by fiduciary obligations until December 29, 2022. That is not the law. Workers have an inalienable right to quit their jobs.[58] And a "fiduciary duty generally ends when the fiduciary resigns his office."[59] Thus, solicitation or other competitive

---

competing interests of allowing an employee some latitude in switching jobs and at the same time preserving some degree of loyalty owed to the employer the mere entering into competition is not enough. It is something more than preparation which is so harmful as to substantially hinder the employer in the continuation of his business. Obviously then each case must be decided upon its own facts. Because of the competing interests the actionable wrong is a matter of degree. 'No ironclad rules as to the type of conduct which is permissible can be stated, since the spectrum of activities in this regard is as broad as the ingenuity of man itself.'").

[57] Complaint ¶ 125.

[58] *Bailey v. Alabama*, 219 U.S. 219, 242 (1911); *Pollock v. Williams*, 322 U.S. 4, 17-18 (1944).

[59] *Calsoft Labs, Inc. v. Panchumarthi*, No. 19-4398, 2020 WL 512123, at *3 (N.D. Cal. Jan. 31, 2020) (granting motion to dismiss claim for breach of fiduciary duty). *See also GAB Business Servs., Inc. v. Linsey & Newsom Claim Services, Inc.,* 83 Cal. App. 4th 409, 421 (2000) (officer can "divest himself or herself of the [fiduciary] duty" by resigning from office) (disapproved of on other grounds by *Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004)); *Injen Technology Co., Ltd. V. Kim,* No. B200686, 2008 WL 2736899, at *4 (Cal. App. July 15, 2008) (affirming trial court decision that former corporate officer did not breach fiduciary duty by soliciting employees of former employer because any fiduciary duties "ended when he resigned"); *Mahagama Comptronics, Inc. v. Perera*, No. B173477, 2005 WL 2082983, at *4 (Cal. App. Aug. 30, 2005) (declaring that "fiduciary duty ended" for corporate officer "once she left the Company"); *Castel S.A. v. Wilson*, No. 19-9336, 2022 WL 504558, at *4 (C.D. Cal. Feb. 18, 2022) (court granted summary judgment on claim for breach of fiduciary duty because plaintiff failed to prove any alleged acts of breach occurred before defendant "James had already resigned from all positions at AIT"); *Calsoft Labs, Inc. v. Panchumarthi*, No. 19-4398, 2019 WL 5811300, at * (N.D. Cal. Nov. 7, 2019) (in granting motion to dismiss breach of fiduciary duty claim, court noted: "Although an officer's fiduciary duty to their employer generally ends upon their resignation, officers are charged with a continuing duty to protect privileged and confidential information even after they leave the company."); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1148-49 (N.D. Cal. 2019) (in granting motion to dismiss claim for breach of fiduciary duty, court noted: "Defendants are correct that, as a general matter, an officer's fiduciary duty to their employer ends upon their resignation"); *PAI Corp. v. Integrated Science Solutions, Inc.*, No. 06-5349, 2009 WL 1106809, at *11 (N.D. Cal. Apr. 23, 2009) (post-trial motion, found jury had basis to find for defendant on breach of fiduciary duty claim because all of the alleged acts occurred "after McCloy's employment with PAI had terminated" and "McCloy's fiduciary duty to PAI had ended" by the time the alleged post-employment acts occurred).

Defendant's Motion to Dismiss

activities Giblin engaged in after November 29, 2022 cannot be the basis for a breach of fiduciary duty claim.

Third, Lockton alleges Giblin breached fiduciary duties by "[f]ailing to return Plaintiffs' Confidential Information" and by "taking Plaintiffs' Confidential Information for use on behalf of Alliant." As discussed above in connection with Lockton's misappropriation claim, these conclusory allegations are just "naked assertions" that fail to show Lockton has a plausible claim.

## VI.  Conclusion

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the entire action on the grounds that Lockton has failed to state a plausible claim under DTSA and that, without a valid federal claim, the Court lacks subject-matter jurisdiction over the remaining claims. To the extent the Court entertains Lockton's state-law claims, it should find that the claims for breach of contract, tortious interference, and breach of fiduciary duty fail to allege facts sufficient to state a claim and should be dismissed on that basis.

Respectfully Submitted,

Dated:   January 31, 2023

**BERKOWITZ OLIVER LLP**

*/s/  Stacey R. Gilman*
Stacey R. Gilman (MO Bar # 55690)
Blake P. Saffels (MO Bar # 73922)
Jasmine O. Ward (MO Bar # 74082)
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri  64108
Telephone:  (816) 561-7007
Facsimile:   (816) 561-1888
sgilman@berkowitzoliver.com
bsaffels@berkowitzoliver.com
jward@berkowitzoliver.com

**MORGAN LEWIS BOCKIUS LLP**

Seth M. Gerber (*pro hac vice* application pending)
Telephone:   (310) 907-1000
Facsmile:    (310) 907-1001
seth.gerber@morganlewis.com

***Attorneys for Defendant Sallie Giblin***


## CERTIFICATE OF SERVICE

I certify that on January 31, 2023, a true and accurate copy of the above and foregoing was filed via the Court's electronic filing system, which transmitted notice of said filing via electronic mail to counsel of record.

*/s/ Stacey R. Gilman*
Attorney for Defendant Sallie Giblin