IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LOCKTON COMPANIES, LLC – PACIFIC SERIES, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 22-cv-00791-SRB ) |
| SALLIE F. GIBLIN, | ) ) |
| Defendant. | ) ) |

## ORDER

Before the Court is Defendant Sallie Giblin's Motion to Dismiss. (Doc. #21.) For the reasons discussed below, the motion is DENIED.

I.  BACKGROUND

Plaintiffs Lockton Companies, LLC – Pacific Series, Lockton Investment Advisors, LLC, and Lockton Investment Securities, LLC f/k/a Lockton Financial Advisors, LLC (collectively, "Lockton") are an insurance brokerage firm, offering insurance, risk management, employee benefits, and retirement services. Defendant Sallie Giblin ("Giblin") is a former Lockton Producer Member, Producer Partner, and co-owner.[1] Giblin was an owner and Producer Member of Lockton from 2006 to 2022. She was also an owner and Producer Partner for the company between 2017 and 2022. As a high-ranking member of Lockton, Giblin had access to the company's most sensitive data and trade secrets regarding business strategies, clients, and personnel.

---

[1] Producer Members hold an ownership interest in Lockton because they make each a contribution and own one unit of the company. A Producer Member becomes a Producer Partner by invitation from Lockton Partners for a "demonstrated history of exception production results and performance as a Producer Member." (Doc. #16, p. 14.) Neither Producer Members nor Producer Partners are considered employees because they have partial ownership of the company.

During her tenure, Giblin was subject to multiple restrictive contracts.[2] Among other restrictions, Giblin agreed she would only resign after giving the company thirty days' written notice and that she would not disclose Lockton's Confidential Information. Confidential Information is defined as:

> information, of or pertaining to any Lockton Entity, disclosed to Member or to which Member has or had access . . . that is related to the business of any of the Lockton Entities . . . which the applicable Lockton Entity has taken reasonable steps to maintain confidentiality. Confidential Information includes trade secrets, non-public proprietary information[.]

(Doc. #16-1, p. 4.)

Giblin was also subject to Lockton's Bring Your Own Device ("BYOD") Policy, which provides that Lockton retains the right to inspect and manage the use of its information on personal devices, both during and after termination. Further, a membership contract she signed confirmed that the agreement was "reasonably necessary" for the protection of Confidential Information. (Doc. #16, p. 20.) She also agreed that breach of her [contract] would "result in irreparable harm and continuing damage [to Lockton.]" (Doc. #16, pp. 20-21.)

On November 29, 2022, Giblin notified Lockton that she was terminating her employment, "[e]ffective immediately[.]" (Doc. #16-5, p. 2.) In her termination email, Giblin alerted Lockton that she would "not access, use, or disclose any of Lockton's allegedly 'Confidential Information' from this point forward" and her "new employer will perform a remediation process as part of [her] onboarding to ensure that [she] no longer possess[es] any of Lockton's allegedly 'Confidential Information.'" (Doc. #16-5, p. 2.) Giblin would go on to work for a competitor of Lockton. Shortly after Giblin's resignation from the company, two Lockton employees who worked closely with Giblin also resigned to join the same competitor.

---

[2] When Giblin became a Producer Partner in 2017, she agreed to be bound by Lockton's Operating Agreement. She was also subject to numerous Member and Partner agreements during her tenure with Lockton.

2

After receiving Giblin's notice, Lockton communicated to Giblin that it expected her to abide by various contractual and fiduciary duties, including the thirty days' notice requirement. Lockton alleges that Giblin declined to abide by her duties and contractual obligations. Lockton also alleges that Giblin misappropriated trade secrets. In support, Lockton references surveillance footage showing Giblin, who primarily works from home and who did not have a calendared meeting that day, leave with a file folder and two filled canvas tote bags from the office. This incident occurred just one week before her employment with a Lockton competitor commenced. Lockton also claims Giblin failed to provide the company with access to electronic materials containing Confidential Information after resigning.

On November 30, 2022, Lockton filed the instant action against Giblin. The Amended Complaint asserts the following claims: (I) Breach of Contract; (II) Tortious Interference with Plaintiffs' Prospective Economic Advantage/Prospective Business Relationships; (III) Breach of Fiduciary Duties and/or Duties of Loyalty; (IV) Misappropriation of Trade Secrets under the Missouri Uniform Trade Secrets Act ("MUTSA,") (Mo. Rev. Stat. § 417.450 et seq.) and the Defend Trade Secrets Act ("DTSA") (18 U.S.C. § 1836 et seq.); and (V) Declaratory Judgment.

Giblin now moves to dismiss Counts I-IV.[3] Lockton opposes the motion. The parties' arguments are discussed below.

## II. LEGAL STANDARD

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. A claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

---

[3] The parties agree, and the Court finds that, except for the DTSA claim, Counts I – IV are governed by Missouri law. The DTSA is a federal statute and is analyzed under federal law.

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (citing *Iqbal*, 556 U.S. at 678).

Although a complaint need not contain "detailed factual allegations," the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 548 (2007). The Court must consider all factual allegations in the complaint as true. *See Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (noting "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable").

## III. DISCUSSION

Giblin argues (1) Count I should be dismissed because Lockton fails to allege a plausible breach of contract claim; (2) Count II should be dismissed because Lockton's Amended Complaint contains "insufficient, incomplete and speculative allegations and fail[s] to show Lockton has a plausible claim for tortious interference" (Doc. #30, p. 15); and (3) Count III should be dismissed because "Lockton's allegations underlying its third count for breach of fiduciary duty [fail] to show Lockton has a plausible claim." (Doc. #22, p. 26.) Lockton disagrees. Each argument is addressed separately below.

### A. Count I—Breach of Contract

Giblin argues that Count I fails to allege a plausible breach of contract claim. Lockton counters that it adequately alleged that Giblin failed to honor the terms of the restrictive contracts she signed as part of her employment with the company.

4

For Lockton to state a claim for breach of contract under Missouri law, it "must establish the existence of a valid contract, the rights of the plaintiff and obligations of defendant under the contract, breach by defendant, and damages resulting from the breach." *Gillis v. Principia Corp.* 832 F.3d 865, 872 (8th Cir. 2016) (applying Missouri law).

Here, the Court agrees with Lockton. Lockton adequately pleads the existence of multiple valid contracts including Member Agreements, the Partner Agreement, and Operating Agreements entered by the company and Giblin. In each of these agreements, there is a description of the parties' relative rights and obligations with respect to Giblin's tenure with Lockton and post-employment conduct. For factual support, Lockton references the Membership Agreement, signed by Giblin, which prohibited her from "(i) disclosing or misusing Plaintiffs' Confidential Information [and] (ii) soliciting 'Producer Members, [e]mployees, and [o]thers' during her membership" with Lockton. (Doc. #16, p. 49.)

In pleading breach, Lockton alleges multiple actions by Giblin, including failure to provide thirty days' written notice of termination of her membership and soliciting Lockton's employees to leave and work with a competitor. Lockton further alleges that at least two employees resigned from Lockton and joined the same competitor as Giblin. These allegations, accepted as true, plausibly indicate that Giblin breached contracts she signed. In terms of damages, Lockton pleads the breach resulted in the loss of customers, employees, and damage generally to the company. The Court finds that Lockton has sufficiently pled a breach of contract claim.

### B. Count II—Tortious Interference

Giblin argues that Lockton's Amended Complaint contains "insufficient, incomplete and speculative allegations and fail[s] to show Lockton has a plausible claim for tortious interference." (Doc. #30, p. 15.) Lockton counters that it adequately alleges that Giblin

5

interfered with Lockton's business expectancy by soliciting Lockton's employees, Producer Members, and clients.

Under Missouri law, "[t]ortious interference with a contract or business expectancy requires proof of: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 316 (Mo. banc 1993).

Here, the Court agrees with Lockton. Lockton alleges that Giblin tortiously interfered with Lockton's business expectancy by soliciting Lockton's employees and clients. Lockton sufficiently alleges that Giblin had knowledge of the business expectancy Lockton had with numerous current and potential customers. Specifically, Lockton provides a contract, signed by Giblin, affirming that "the relationships of [Lockton] and its Customer Accounts[4] . . . have been developed at great time and expense, and . . . are among its highest priorities[.]" (Doc. #16-1, p. 7.) Finally, Lockton alleges that Giblin asked a Producer Member not to call a mutual client to retain the client's business for Lockton. This, along with other alleged actions, provide enough context to adequately plead that Giblin lacked justification for her actions. Consequently, Lockton has sufficiently pled a claim for tortious interference.

C. **Count III—Breach of Fiduciary Duties and/or Duties of Loyalty**

Giblin argues that "Lockton's allegations underlying its third count for breach of fiduciary duty [fail] to show Lockton has a plausible claim." (Doc. #22, p. 26.) Lockton counters that its Amended Complaint sufficiently alleges all elements to adequately state a claim.

---

[4] Customer Accounts means "the accounts of all customers of one or more of the Series, the Other Series, or any Affiliate" as well as "prospective customers of either one or more of the Series, the Other Series or any Affiliate," subject to certain conditions. (Doc. #16, p. 16.)

"In Missouri, a claim for breach of fiduciary duty has four elements: (1) the existence of a fiduciary relationship between the parties; (2) a breach of that fiduciary duty; (3) causation; and (4) harm." *Lafarge N. Am., Inc. v. Discovery Grp. L.L.C.*, 574 F.3d 973, 983 (8th Cir. 2009).

Here, the Court agrees with Lockton. Giblin was a "co-owner with respect to the business" and thus owed a fiduciary duty to Lockton. (Doc. #16-1, p. 21); *see also Hibbs v. Berger*, 430 S.W.3d 296, 315 (Mo. App. E.D. 2014) (holding that managers and members of an LLC owe fiduciary duties to the LLC). The Amended Complaint sufficiently alleges that Giblin breached that duty by taking Lockton's Confidential Information and using it on behalf of a competitor. Lockton adequately alleges it was harmed due to the purported solicitation of customers by Giblin. This allegedly "harm[ed] all remaining Producer Partners by negatively impacting the value of a Producer Partner's Partner Unit and injuring the competitive position of Lockton Partners as a whole." (Doc. #16, p. 28.) This allegation of solicitation is adequate to sufficiently plead causation. The above allegations "allow[] the court to draw the reasonable inference" that Giblin is liable for breach of fiduciary duty. *Ash v. Anderson Merchs.*, LLC, 799 F.3d 957, 960 (8th Cir. 2015).

### D. Count IV—Misappropriation of Trade Secret Violations of The Missouri Uniform Trade Secrets Act and Defend Trade Secrets Act[5]

Giblin argues Count IV should be dismissed because (1) Lockton fails to identify trade secrets with sufficient particularity and (2) Lockton's Amended Complaint does not allege facts showing Giblin has misused or wrongly disclosed any purported trade secrets. Lockton disagrees. Each argument is addressed separately below.

---

[5] Because these statutes are essentially identical, the Court will analyze the claims together. *See Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 955 (8th Cir. 2023) (analyzing Missouri Uniform Trade Secrets Act and DTSA together because they are essentially identical).

7

### 1. Trade Secrets

Giblin argues that that Count IV should be dismissed because Lockton fails to identify the trade secrets with sufficient particularity at the pleading stage. Lockton claims its Amended Complaint sufficiently alleges the existence of trade secrets.

"To demonstrate misappropriation of trade secrets, [Lockton] must show, among other things, the existence of a protectable trade secret and misappropriation of that trade secret." *MPAY Inc. v. Erie Custom Computer Applications, Inc.*, 970 F.3d 1010, 1016 (8th Cir. 2020) (applying federal law). A "trade secret" is information that "the owner thereof has taken reasonable measures to keep secret" and that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3); *see* Mo. Rev. Stat. § 417.453(4).

The Court finds that Lockton adequately alleges that the information that was purportedly misappropriated—Lockton's Confidential Information—qualifies as trade secrets. In its Amended Complaint, Lockton describes steps taken to keep proprietary information secret, including the company entering "into agreements that obligate those with access to ensure that its Confidential Information is protected." (Doc. #16, p. 54.) This non-public information, which Lockton worked to keep secret, has economic value because Lockton "derives economic benefit" from it not being readily known or ascertainable. *Conseco Fin. Servicing Corp. v. N. Am. Mortg. Co.*, 381 F.3d 811, 819 (8th Cir. 2004). Thus, Lockton alleges the existence of protectable trade secrets.

### 2. Misappropriation

Giblin argues that Count IV fails because Lockton's Amended Complaint does not allege facts showing Giblin has misused or wrongly disclosed any purported trade secrets. Lockton

8

claims it sufficiently pleads trade secret misappropriation by improper acquisition and disclosure/use.

"Misappropriation can occur in various ways, including . . . (2) disclosure . . . of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure . . . knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret[.]" *MPAY Inc.*, 970 F.3d at 1017 (internal quotation marks omitted).

Here, the Court agrees with Lockton. Lockton adequately pleads that Giblin improperly took Lockton's Confidential Information in the form of hardcopy documents from Lockton's offices shortly before her resignation. As part of her employment with Lockton, Giblin was required to sign a contract in which she acknowledged that she was prohibited from disclosing the trade secrets contained in Lockton's Confidential Information. In its Amended Complaint, Lockton describes surveillance footage showing Giblin leaving the office through the garage exit carrying a file folder and two canvas tote bags that appeared to be filled—which she was not carrying when she arrived at the office that day. This visit was of note considering that Giblin worked primarily from home, and allegedly had nothing on her work calendar to indicate a meeting or other reason requiring her to work from the office that day. This is alleged to have occurred just two days before Thanksgiving and one week before her resignation from Lockton. When Giblin did resign, Lockton claims she refused to cooperate with the company's inspection requests and did not immediately return the Confidential Information allegedly in her possession. Giblin allegedly withheld hard copy documents containing secretive information for two months after she joined Lockton's competitor.

Regarding electronically stored information, Lockton pleads that Giblin failed to return and provide Lockton access to electronic materials containing Confidential Information for the company to ensure its removal. While employed with a competitor, Lockton alleges that Giblin refused to quarantine her phone or restrict access or use of Lockton's trade secrets—despite repeated requests. In late December 2022, Giblin informed Lockton that she turned over her personal IT devices to an independent computer forensics firm. That company had purportedly begun a remediation process, notwithstanding Lockton's express instructions to the contrary. Lockton alleges that Giblin refused to explain how the firm was conducting the remediation, or what data it was accessing, altering, or removing. Allegedly, Giblin also failed to identify or provide copies of the information removed or deleted by the firm. Taking all these factual allegations as true, Lockton provided enough factual material to make it plausible that Giblin engaged in improper disclosure or use of Lockton's trade secrets. Accordingly, Lockton has presented enough factual support to sufficiently plead liability under the DTSA and MUTSA.

## IV. CONCLUSION

For the reasons stated above, Defendant Sallie Giblin's Motion to Dismiss (Doc. #21) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: March 31, 2023