**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| LOCKTON COMPANIES, LLC – PACIFIC SERIES, et. al., | ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    Case No. 22-cv-00791-SRB |
| | ) |
| SALLIE F. GIBLIN, | ) |
| | ) |
| Defendant. | ) |

## <u>ORDER</u>

Before the Court is Defendant Sallie F. Giblin's ("Giblin") Motion for Partial Summary Judgment. (Doc. #207). For the reasons stated below, that Motion is GRANTED IN PART and DENIED IN PART. Also before the Court is Plaintiffs Lockton Companies, LLC – Pacific Series; Lockton Investment Advisors, LLC; Lockton Investment Securities, LLC f/k/a Lockton Financial Advisors, LLC; and Lockton Partners, LLC's (collectively, "Lockton") Motion for Partial Summary Judgment on Claims for Declaratory Relief. (Doc. #214). For the reasons stated below, that Motion is GRANTED. Finally, before the Court is Lockton's Motion for Partial Summary Judgment on Claims of Breach of Contract and Fiduciary Duty. (Doc. #216). For the reasons stated below, that Motion is GRANTED IN PART and DENIED IN PART.

## I. FACTUAL BACKGROUND[1]

Lockton is an insurance brokerage firm, offering insurance, risk management, employee benefits, and retirement services. Giblin is a former Lockton Producer Member and Producer

---

[1] The following facts are taken from the parties' briefs and the record, and are either uncontroverted or deemed uncontroverted by the Court. As this case has been extensively briefed over the last eighteen months, only the facts necessary to resolve the instant motion are discussed. Additional facts relevant to the pending motion are discussed in Section III.

Partner.  Giblin was a Producer Member of Lockton from 2006 to 2022.  She was also a Producer Partner for Lockton between 2017 and 2022.  Giblin lived and focused her work in and around Southern California during her time with Lockton.

During her tenure, Giblin was subject to multiple agreements drafted by Lockton.[2]  These Agreements laid out the relationship and obligations between Giblin and Lockton.  Among the Agreements' terms, Giblin agreed to restrictive covenants that prohibit her from soliciting directly or indirectly Lockton Customer Accounts or Lockton Members and employees.  These Agreements also contained a Missouri forum-selection clause and choice-of-law provision.  Further, as part of these Agreements, Giblin agreed to be bound by Lockton's Operating Agreements.

Giblin resigned from Lockton on November 29, 2022, and immediately began to work for Alliant Insurance Services, Inc. ("Alliant"), which offers services similar to Lockton's.  On November 30, 2022, Lockton filed this action against Giblin.  Lockton's Amended Complaint asserts the following claims: (I) Breach of Contract; (II) Tortious Interference with Plaintiffs' Prospective Economic Advantage/Prospective Business Relationships; (III) Breach of Fiduciary Duties and/or Duties of Loyalty; (IV) Misappropriation of Trade Secrets under the Missouri Uniform Trade Secrets Act ("MUTSA") (Mo. Rev. Stat. § 417.450 *et seq.*) and the Defend Trade Secrets Act ("DTSA") (18 U.S.C. § 1836 *et seq.*); and (V) Declaratory Judgment.[3]

---

[2] The May 1, 2017 Amended and Restated Member Agreement is the most recently executed agreement between Giblin and Lockton.  Giblin was subject to four Member and Partner agreements during her tenure with Lockton.  These agreements will be collectively referred to as "Agreements" throughout this Order.  If the Court refers to a particular agreement apart from the others, the Order will state that.  In the May 1, 2017 amendments to the Agreements, Giblin "ratified and confirmed" that all provisions of prior versions of those Member Agreements that were not specifically modified "shall remain in full force and effect."

[3] In July 2023, Lockton moved for summary judgment asking this Court to declare that the Missouri forum-selection clause was valid and enforceable.  On November 8, 2023, this Court granted Lockton's request.  Lockton later moved to have the Court's November 8 Order certified under Federal Rule of Civil Procedure 54(b), which this Court granted on December 18, 2023.  Giblin appealed that Order to the Eighth Circuit, where it is still pending.

2

The parties have now filed motions for summary judgment on Counts I, II, III, and V. These issues are addressed separately below.

## II.  LEGAL STANDARD

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up).  If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial."  *Id.* (quotation marks omitted).  If there is a genuine dispute as to certain facts, those facts "must be viewed in the light most favorable to the nonmoving party."  *Id.*  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Id.* (quotation marks omitted).

## III.  DISCUSSION

### A.  Count I – Breach of Contract

"The elements of a breach of contract action are (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff."  *Goldsmith v. Lee Enterprises*, *Inc.*, 57 F.4th 608, 612 (8th Cir. 2023).[4]  As to Count I, Lockton seeks summary judgment on (a) whether Giblin failed to comply with the Missouri forum-selection clause, and (b) whether Giblin breached any contractual obligations by working for Alliant within thirty days

---

[4] In *Goldsmith*, the Eighth Circuit applied Missouri law. *See* section III.D.a below for the Court's analysis on the valid and enforceable Missouri choice-of-law provision.

of resigning from Lockton.  Giblin moves for summary judgment on (c) whether Giblin solicited Lockton Members and employees, and (d) whether Giblin solicited Lockton Customer Accounts.

### a. Whether Giblin breached her Agreements by filing suit in California in violation of the Missouri forum-selection clause.

Lockton argues it "is entitled to partial summary judgment on its claim that Giblin breached the parties' Missouri forum-selection clause."  (Doc. #225, p. 17) (*See* Doc #16, ¶ 171(f)).  Lockton seeks partial summary judgment on "the issue of liability" only and states that "[t]he amount of [] damages . . . are issues for another day."  (Doc. #225, pp. 19, 6).  Giblin argues that she had "a good faith reason to believe that the Missouri forum clause in Lockton's agreements was void and unenforceable and, therefore, severable from the agreements according to their terms."  (Doc. #242, p. 80.)

Section 7.7(a) of the Agreements state

> Any action involving any disputes, claims or issues that in any way pertain to the interpretation, validity or enforceability of, or otherwise arise out of or relate to this Agreement . . . *shall be brought exclusively in any Federal Court in Kansas City, Missouri or in the Circuit Court of Jackson County, Missouri*; . . . Such courts shall have exclusive jurisdiction over these matters, and Member hereby agrees to be subject to the personal jurisdiction of such courts.

(Doc. #16-1, p. 13) (emphasis added).

On November 8, 2023, this Court entered partial summary judgment for Lockton and declared that the Missouri forum-selection clause was "valid and enforceable."  (Doc. #127, p. 8.)  Further, there is no dispute that Giblin filed suit against Lockton in California state court in December 2022 and that she seeks declaratory relief that the Agreements contain unlawful restrictive covenants, forum-selection, and choice-of-law provisions.  *See* (Doc. #218-24, p. 30.)  Finally, the inclusion of the language such as "shall" and "exclusive" makes clear that the forum-selection clause is mandatory.  *Opioid Master Disbursement Tr. II v. ACE Am. Ins.*, No. ED

4

111765, 2024 WL 924365, at *4 (Mo. Ct. App. Mar. 5, 2024) ("'shall' indicates a mandatory duty to abide by th[e] [forum-selection clause].")  Therefore, Giblin had a mandatory duty to abide by the Missouri forum-selection clause and breached that duty.  Even if Giblin believed she had a good-faith belief that the California state court would find the clause void and unenforceable, Giblin cites no authority on how that belief excuses her breach.

Therefore, Lockton's request for partial summary judgment on the issue of whether Giblin breached the Missouri forum-selection clause provision is GRANTED.  *See* (Doc #16, ¶ 171(f)).  As Lockton only seeks judgment only on the issue of liability, the Court makes no determination on Lockton's damages.  However, as Lockton contends that it has "suffered financial losses from having to litigate Giblin's parallel, duplicative, and improperly filed action in California," the Court is amenable to reopening the deadline for summary judgment and invites Lockton to seek summary judgment on the issue of its damages.  (Doc. #225, p. 18); *see Allendale Mut. Ins. Co. v. Excess Ins. Co.*, 992 F. Supp. 278, 286 (S.D.N.Y. 1998) (allowing damages for expenses incurred defending an action in breach of a forum selection clause).

### b. Whether Giblin breached her contractual obligations by failing to give 30-days' notice.

Lockton argues it "is entitled to partial summary judgment on its claim that Giblin breached the Operating Agreements by failing to comply with the 30-day notice [of termination] provision." (Doc. #225, p. 19.)  Giblin argues that the notice requirement is "permissive[,]" an "overbroad noncompete covenant[,]" and it "violates Giblin's constitutional rights."  (Doc. #242, pp. 80, 84, 87.)

5

Section 5.10 of the Operating Agreement states "[a]ny Producer Member [Giblin] *may* be terminated as a Member: . . . by such Series Member [Giblin] on thirty (30) days' written notice to the [Pacific] Series[.]"[5] (Doc. #226-3, p. 40) (emphasis added).

Courts "interpret the words used in a contract as having their common and ordinary meaning, unless the context makes clear that a technical or special meaning was intended or unless the words used have a special meaning in the parties' trade or business." *Herion Co. v. Taney Cnty., Missouri*, 514 S.W.3d 620, 626 (Mo. Ct. App. 2017). Further, inserting "language into a contract is forbidden." *Nooter Corp. v. Allianz Underwriters Ins. Co.*, 536 S.W.3d 251, 282 (Mo. Ct. App. 2017).

Upon review, the Court disagrees with Lockton's position that Section 5.10(a) must mean "Giblin agreed to terminate her ownership interest in any of the Lockton entities *only* 'on thirty (30) days' written notice[.]'" (Doc. #225, p. 12) (emphasis added) (citation omitted). Giblin is correct that the words "only" or "shall" do not appear in Section 5.10(a). And the Court declines to insert language that is not present. Further, the Court agrees with Giblin that "may" is a "permissive term" meaning "[t]o be permitted to[.]" (Doc. #242, p. 81); *May*, Black's Law Dictionary (11th ed. 2019).

Ultimately, considering Lockton's interpretation of Section 5.10 reads language into the provision that is not present, Lockton's request for summary judgment that Giblin breached the Agreements' provision regarding thirty days' written notice is DENIED. (See Doc #16, ¶ 171(a)).[6] Based on this ruling, the Court is amenable to reopening the deadline for summary

---

[5] The Operating Agreement defines "Producer Member" as "a Series Member holding a Producer Unit[;]" a "Series Member" is defined as "members of a Series[;]" "Member" means "a Series Member[s][;]" and the definition of "Series" includes the "Pacific Series." (Doc. #226, pp. 20, 18, 23.)

[6] Lockton appears to also seek summary judgment on breach of contract of Sections 5.3 and 5.8 of the Operating Agreement. The parties dispute whether Lockton properly pled this claim. The Court agrees with Giblin that "Lockton has not asserted any cause of action or facts that support a breach [of contract] of either Section 5.3 or Section 5.8 of

judgment, inviting Giblin to seek summary judgment on whether Giblin breached any contractual duties by failing to provide thirty-days' notice.

### c. Whether Giblin solicited Lockton members and employees to leave Lockton.

First, Giblin argues that she is entitled to summary judgment on Lockton's breach of contract claim to the extent that Giblin breached the non-solicitation of members and employees contract provision. Lockton states that it "is no longer asserting its claim that Giblin solicited Lockton members or employees." (Doc. #244, p. 26.)

Therefore, in light of Lockton's position that it will no longer pursue this claim, Giblin is GRANTED summary judgment on Count I to the extent Giblin breached the non-solicitation of members and employees. (*See* Doc #16, ¶ 171(d)).

### d. Whether Giblin solicited, serviced, or accepted business from Lockton's customer accounts.

Second, Giblin argues that she is entitled to summary judgment on Lockton's breach of contract claim to the extent Giblin breached the "nonsolicitation/no-servicing/no-accepting restrictive covenants." (Doc. #223, p. 47.) In response, Lockton states it only contends Giblin breached the non-solicitation provision and further that "[t]here are numerous facts showing a

the Operating Agreement." (Doc. #242, p. 89); *see* (Doc. #16, p. 50) (listing Giblin's various alleged breaches in the Amended Complaint); *see also Gilmour v. Gates, McDonald, and Co.*, 382 F.3d 1312, 1314 (8th Cir. 2004) (liberal pleading standard for complaints "does not afford plaintiff[] with an opportunity to raise new claims at the summary judgment stage.")

Upon review of the Amended Complaint, Lockton cites Section 5.3 of the Operating Agreement only under Count III. The Court found no mention of Section 5.8 of the Operating Agreement in the Amended Complaint. Further, Sections 5.3 and 5.8 of the Operating Agreement deal with "Duties of Producer Members" and "Other Business Ventures[,]" respectively. (Doc. #226-3, pp. 39, 40.) Neither section appears to reference the thirty-day notice provision in Section 5.10. Therefore, the Court disagrees with Lockton that its allegations "are sufficient to put her on notice that Lockton is pursuing a claim that her failure to give 30 days' notice was a breach of the Operating Agreement." (Doc. #269, p. 27.)

Further, even if Lockton properly pled breach of Sections 5.3 and 5.8 of the Operating Agreement, as Lockton's argument is based on Giblin being required to give thirty-days' notice, as provided above, the Court rejects that argument.

7

genuine dispute of material fact regarding Giblin's breach of contract by soliciting Lockton

Customer Accounts."  (Doc. #244, p. 47.)

> Section 5.4 of the Agreements state:
>
> [w]hile Member is a Producer Member of the Series and for a period of two (2) years following the sale of Member's Producer Unit (which occurs on the Buy-Sell Purchase Date):
>> a) Member shall not, *directly or indirectly*, for himself or on behalf of any other Person, solicit . . . or attempt to solicit . . . any of the Customer Accounts . . . to reduce, terminate or transfer to a competitor any products or services that are the same or substantially similar to, or directly competitive with, the products or services provided by the Series[.] . .

(Doc. #16-1, p. 9) (emphasis added)

While Giblin contends there is no evidence to show that Giblin breached her Agreement

by soliciting Lockton Customer Accounts, Lockton argues that 1) "[w]hile still new at Alliant,

Giblin reached out to Alliant's managing director about an opportunity she saw to solicit

Velocity Vehicle Group [("VVG")][;]" 2) Giblin coordinated "a 'Women in Governance' event

in which Giblin operated as a moderator for the panel" and the "invite lists [for the panel]

included numerous clients covered by Giblin's non-solicitation covenant—although Giblin

(conveniently) was not in charge of personally inviting any of those accounts[;]" and 3) "Giblin

breached her non-solicitation clause by indirectly soliciting restricted clients through [Grace]

Bennett [("Bennett")][7]." (Doc. #244, pp. 47-48.)

Upon review, the Court finds that these events fail to create a genuine issue of material

fact regarding whether Giblin breached her Agreements by soliciting Lockton Customer

Accounts either directly or indirectly.  To start, as the Agreements do not define solicitation, the

Court uses Black's Law Dictionary's definition, which is "[t]he act or an instance of requesting

---

[7] Bennett and Giblin worked closely together at Lockton.  Soon after Giblin left Lockton for Alliant, Bennett also resigned from Lockton and went to work for Alliant.  Bennett was not subject to any noncompete provisions.

8

or seeking to obtain something." *Solicitation*, Black's Law Dictionary (11th ed. 2019). Under this definition, the Court examines whether Lockton's evidence of solicitation is sufficient to survive summary judgment.

First, Lockton produced no evidence that Giblin directly solicited VVG.[8] Lockton argues that an email between Giblin and Mark Conway ("Conway"), Alliant's Managing Director shows that "Giblin and Conway had spoken 'on the phone' about contacting [VVG's] Insurance Consultant, RJL Insurance Services [("RJL")], about a 'Shared in Layer' Program at Alliant." (Doc. #244, p. 42). However, that email shows no evidence of Giblin directly soliciting VVG. While Giblin acknowledges in the email that VVG was a former client of hers until May 2020, there is no indication that she personally contacted anyone at VVG to solicit, induce, persuade, or encourage them to come to Alliant. Further, nothing in Giblin's deposition testimony or other evidence cited by Lockton shows Giblin directly solicited or had contact with anyone at VVG. *See* (Doc. #239-2; Doc. #226-9, p. 41.)

The Court also finds that this email is not evidence of indirect solicitation. While Giblin appears to have discussed with Conway a potential opportunity with VVG, Giblin testified that no one at Alliant ever took a meeting with VVG. Lockton cites no evidence to the contrary. The email at most shows that Giblin was in contact with an employee at RJL, which according to Lockton, is an insurance consultant of VVG. However, Lockton produced no evidence that the RJL employee was in contact with VVG on Giblin's behalf or that Giblin induced this consultant to solicit or obtain anything from VVG on her behalf. *Compare Am. Pamcor, Inc. v. Klote*, 438 S.W.2d 287, 291 (Mo. Ct. App. 1969) (allowing damages for violating a noncompete indirectly

---

[8] Giblin testified that VVG was a "former client that fired [Lockton]" in 2020. (Doc. #226-9, p. 40.) Lockton contends that VVG "only changed brokers for some of the services it received from Lockton" and "it is still an active client." (Doc. #244, p. 43.) For the sake of resolving this motion, the Court assumes the restrictive covenants apply to VVG.

9

where defendant personally hired salesmen to work directly in territory prohibited under the noncompete). Therefore, Lockton's argument that this email creates a genuine dispute of material fact fails.

Next, the Court is not persuaded that Giblin's involvement with a "Women in Governance" panel is evidence of solicitation. Lockton argues that the invite list for this event "included numerous clients covered by Giblin's non-solicitation covenant" but that "conveniently" she was not in charge of personally inviting those clients to the event. (Doc. #244, p. 48.) But evidence that Giblin moderated an event that former clients may have attended does not create a genuine issue of material fact that Giblin improperly solicited those clients. Lockton admits that Giblin herself did not invite those former clients to the event. Further, even if Giblin "present[ed] in front of and interact[ed] with her former Lockton clients[,]" Lockton produced no evidence that Giblin solicited, induced, persuaded or encouraged those clients to leave Lockton and join Alliant. (Doc. #244, p. 48.) Merely being present at the same event without more is insufficient to create an inference of solicitation or that Giblin was unfairly competing with Lockton. *See Jefferson City Med. Grp., P.C. v. Brummett*, No. WD 86589, 2024 WL 1517680, at *7 (Mo. Ct. App. Apr. 9, 2024) (stating courts enforce noncompete clauses "to protect the employer from *unfair* competition") (emphasis added); *see also Acuity Brands, Inc. v. Bickley*, No. CV 13-366-DLB-REW, 2017 WL 1426800, at *22 (E.D. Ky. Mar. 31, 2017) ("Surely one does not solicit someone by merely having a conversation.").

Further, the event itself was titled "Women in Governance – Pathways to the Boardroom for HR Leaders," and it included panelists and moderators from various companies, not just Alliant. Nothing about the event's description or Giblin's role as a moderator discussing "pathways to board service for all human resources professionals" suggests that it was a covert

operation to solicit Lockton's Customer Accounts. (Doc. #239-5, p. 10.) Again, there is no evidence that Giblin induced anyone at the event to solicit Lockton Customer Accounts on her behalf. Lockton has therefore not carried its burden that Giblin's moderation of this event creates a genuine issue of material fact as to whether she solicited Lockton Customer Accounts.

Finally, the Court finds that there is insufficient evidence to create a genuine issue of material fact that "Giblin indirectly solicited clients through Grace Bennett." (Doc. #244, p. 48.) In support of this argument, Lockton first cites the deposition of Alliant's Paul Moore ("Moore"), who testified that he knew Giblin and Bennett worked "closely" together and "collaborated on" opportunities while at Lockton. (Doc. #244-1, p. 4.) Moore also testified that Bennett would receive calls from Lockton Customer Accounts and that they "would ask about [Giblin]. She would tell [them] that she was at Alliant and [Bennett], depending on the conversation, the temperature of it, the receptivity may or may not have . . . asked if they would like to . . . take a meeting with Alliant." (Doc. #244-1, p. 8.) Lockton particularly points to Bennett's testimony that she "reached out to Mad Engine" once she was at Alliant even though it had been a client of Giblin's at Lockton. (Doc. #244-5, p. 9.) Bennett testified she chose to reach out to Mad Engine because "she really enjoyed working with them." (Doc. #244-5, p. 9.) As part of Alliant's solicitation of Mad Engine, an Alliant executive stated in an email to the Chief Human Resources Officer of Mad Engine that "[a] couple of the team members remain under Lockton's non-compete but [he] did have a great conversation with Grace Bennett." (Doc. #239-15, p. 4.) Both Giblin and Bennett deny ever discussing Mad Engine with each other once they were at Alliant. Lockton argues, however, that the "smoking gun" against Giblin is that Mad Engine is Bennett's only client that is not also Giblin's at Alliant. (Doc. #244, p. 48.)

The Court disagrees.  Lockton provides no evidence that Giblin induced Bennett to solicit Mad Engine on her behalf.  Unlike in the *American Pamcor, Inc. v. Klote* case cited by Lockton in support of its position, there is no evidence that Giblin herself hired Bennett to work for her and then sent her out to contact her former Lockton Customer Accounts.  438 S.W.2d 287, 289 (Mo. App. 1969).  Further, the defendant in that case personally accepted and then filled the orders for those clients under the noncompete.  *Id.* at 291.  Here, by contrast, Giblin does not work at all with Mad Engine.  Indeed, it appears that Bennett was under no obligation of her own not to contact Mad Engine and she did just that.

Therefore, considering the above, the Court also finds that Lockton's evidence of Bennett's involvement in pitching Alliant to Lockton Customer Account Skyview Capital is insufficient to create a genuine issue of material fact.  Just as Bennett contacting Mad Engine without discussing it with Giblin is not evidence of indirect solicitation by Giblin, neither is Bennett's own involvement with Skyview Capital.  Again, "Lockton offered no evidence linking Giblin to Skyview."[9]  (Doc. #268, p. 95.)

Thus, for the reasons stated above and for Giblin's other stated reasons, summary judgment is GRANTED in favor of Giblin on Count I to the extent that Lockton claims Giblin breached the non-solicitation of Lockton Customer Accounts provision.  (*See* Doc #16, ¶ 171(e)).

**B. Count II – Tortious Interference with Prospective Economic Advantage**

Giblin argues that she is entitled to partial summary judgment "on Lockton's claim for tortious interference with prospective economic advantage because Lockton lacks evidence of Giblin's liability."  (Doc. #223, p. 50.)  Lockton counters that there "are disputes of fact regarding Giblin's intentional acts that disrupted economic relationships." (Doc. #244, p. 51.)

---

[9] To the extent Lockton argues that Bennett's involvement in pitching or receiving calls from any other Lockton Customer Accounts is evidence of Giblin's indirect solicitation, the Court also rejects that argument.

"Under Missouri law, the elements of tortious interference with a contract or business expectancy are (1) a contract or valid business expectancy, (2) defendant's knowledge of the contract or relationship, (3) an intentional interference by the defendant inducing or causing a breach of the contract or relationship, (4) absence of justification and (5) damages."[10] *Wash Sols., Inc. v. PDQ Mfg., Inc.*, 395 F.3d 888, 895 (8th Cir. 2005) (citing *Serv. Vending Co. v. Wal–Mart Stores*, 93 S.W.3d 764, 769 (Mo. Ct. App. 2002)).

To avoid summary judgment on Count II, Lockton primarily relies on the same solicitation evidence discussed under Count I. *See Am. Bus. Interiors, Inc. v. Haworth, Inc.*, 798 F.2d 1135, 1145 (8th Cir. 1986) ("conduct breaching a contract may constitute tortious interference where the elements of the tort have been satisfied"). However, the Court previously found that Giblin's involvement with the Women in Governance panel, her contact with the RJL employee, and Bennett's independent solicitation of Lockton Customer Accounts is not sufficient evidence to create a genuine issue of material fact regarding whether Giblin solicited Customer Accounts. Thus, that same evidence fails to create a genuine issue of material fact that Giblin "intentionally interfered" with Lockton's prospective business relationships.

Thus, for the reasons stated above and for Giblin's other stated reasons, summary judgment is GRANTED for Giblin on Count II. Count II is DISMISSED WITH PREJUDICE.

### C. Count III – Breach of Fiduciary Duty and/or Duty of Loyalty

Both Lockton and Giblin argue they are entitled to summary judgment on Lockton's claim for breach of fiduciary duty and/or duty of loyalty.

---

[10] In its Amended Complaint, Lockton labels Count II as "Tortious Interference with Plaintiffs' Prospective Economic Advantage/Prospective Business Relationships." (Doc. #16, p. 51.) However, in the briefing for this pending Motion, Lockton refers to the tort as "tortious interference with a contract o[r] business expectancy[.]" (Doc. # 244, p. 51.) The parties cite virtually identical elements for the claim and therefore, the Court understands the parties to be discussing the same tort.

13

To succeed on a "claim for breach of fiduciary duty under Missouri law, [Lockton] must show: (1) a fiduciary relationship existed; (2) breach; (3) causation; and (4) harm." *Int'l Env't Mgmt., Inc. v. United Corp. Servs., Inc.*, 858 F.3d 1121, 1125 (8th Cir. 2017). Here, the parties do not appear to dispute a fiduciary relationship existed.[11] As it appears the parties only dispute the elements of breach and damages, the Court will address only those elements.

First, Lockton argues that "Giblin's acceptance and commencement of employment with Alliant . . . was a clear breach of her fiduciary duties[.]" (Doc. #225, p. 23.) Giblin resigned from Lockton on November 29, 2022, and began to immediately work for Alliant; therefore, Lockton argues that when Giblin began working for Alliant, she was still a Lockton "owner" for thirty days as Lockton's Operating Agreement does not allow immediate termination of her membership. (Doc. #244, p. 54.) As stated above, the Court rejects Lockton's argument that Section 5.10 of the Operating Agreements required Giblin to provide thirty days' written notice before terminating her membership. Therefore, the Court rejects this argument as a basis for granting summary judgment for Lockton on this claim.

Second, Giblin argues in support for her motion for summary judgment on this claim 1) that her fiduciary duties ended when she resigned from Lockton and 2) "the evidentiary record is devoid of any evidence that Giblin solicited any Lockton members/employees or solicited/serviced Lockton customers between November 29, 2022 and December 29, 2022." (Doc. #223, p. 53.) These arguments appear to relate to Giblin's general contention that her "effective immediately" resignation did not breach any contractual provisions and as a result, she

---

[11] However, the parties appear to assume the fiduciary relationship exists for different reasons. Lockton refers to Giblin as a "co-owner" and as such, owed fiduciary duties to Lockton, while Giblin refers to herself as a "Lockton employee." (Doc. #225, p. 23; Doc. #223, p. 52.) Further, the Court disagrees with Lockton's assertion that this Court "already held" that Giblin was a "co-owner" in its previous order denying Lockton's motion to dismiss in March 2023. (Doc. #225, p. 23.) To the contrary, the Court merely quoted Lockton's Amended Complaint alleging that Lockton was a co-owner for the sake of resolving the motion to dismiss. Ultimately, as its unnecessary for the purpose of this Order to determine whether Giblin was a "co-owner" or "employee," the Court declines to do so.

14

did not breach any fiduciary duties.  However, as Giblin did not move for summary judgment on whether she breached the thirty-day notice provision, the Court has only rejected Lockton's argument that the provision clearly required her to give thirty-days' notice.  The current record does not establish whether Giblin's fiduciary duties ended upon her immediate departure. Therefore, the Court is amenable to reopening the deadline for summary judgment and invites Giblin to seek summary judgment on whether Giblin's fiduciary duties ended upon her immediate departure from Lockton.

For the foregoing reasons, both Lockton and Giblin's requests for summary judgment on Lockton's claim for breach of fiduciary duty are DENIED.[12]

### D.  Count V – Declaratory Judgment

#### a.  Whether the Missouri choice of law clause is enforceable.

Lockton requests the Court enter summary judgment in its favor, finding that the Agreements' Missouri choice-of-law clause is valid and enforceable.  Giblin argues that it is not enforceable, and that California law should apply.

Section 7.7(a) of the Agreement states:

> Member and the Series agree that this Agreement shall be deemed to have been made in the State of Missouri. This Agreement and all disputes, claims or issues that in any way pertain to the interpretation, validity or enforceability of, or otherwise arise out of or relate to the Agreement, the Operating Agreement and/or Member's membership in the Series . . . shall be subject to, governed by, and construed in accordance with the laws of the State of Missouri without reference to choice of laws, irrespective of the fact that one or both of the parties now is or may become a resident of a different state.

(Doc. #218-3, p. 13.)

---

[12] As the parties do not appear to have separate arguments on the duty of loyalty claim compared to the breach of fiduciary duty claim, the Court finds that the same analysis above applies to Lockton's claim for breach of duty of loyalty.

Missouri law "recognize[s] that generally parties may choose the state whose law will govern the interpretation of their contractual rights and duties." *Sturgeon v. Allied Pros. Ins. Co.*, 344 S.W.3d 205, 210 (Mo. Ct. App. 2011). "Federal courts deciding federal question cases involving choice-of-law [generally] apply the approach outlined by the Restatement (Second) of Conflict of Laws." *Kansas City Chiefs Football Club, Inc. v. Allen*, No. 4:12-CV-00238-BCW, 2013 WL 1339820, at \*5 (W.D. Mo. March 30, 2013). Under this approach, a choice-of-law provision will be upheld, unless

> either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of a particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Id.* (citing Rest. 2d Conflict of Laws § 187 (1971).

The Court agrees with Lockton that the Missouri choice-of-law clause is valid and enforceable. First, Missouri has a substantial relationship to the parties as Lockton is comprised of Missouri LLCs, with Lockton's headquarters located in Kansas City, Missouri. With that, Missouri has a strong interest in enforcing its residents' contracts. Further, the Court finds Lockton's argument that it "selected Missouri law so that its LLC members across 31 states would have consistent rights" persuasive. (Doc. # 226, p. 28); *see e.g., SKF USA Inc. v. Okkerse*, 992 F. Supp. 2d 432, 441 (E.D. Pa. 2014) (recognizing the benefit "that uniformity of contract serves[,]" especially when "[p]laintiff is a national company with thousands of employees located in multiple states); *Abat v. Chase Bank USA, N.A.*, 738 F. Supp. 2d 1093, 1096 (C.D. Cal. 2010) (upholding a Delaware choice of law provision because "Delaware has a significant interest in regulating its banks who do business nationwide"). Ultimately, the Court finds the parties had a "reasonable basis" for choosing Missouri.

16

Second, the Court finds that while California may have a substantial interest in this dispute, its interest is not a materially greater interest than of Missouri.  While Giblin lives and works in California, along with other deponents in this case, those facts alone are insufficient for California to have a materially greater interest than Missouri.  *See*, *e.g. TLC Vision (USA) Corp. v. Freeman*, No. 4:12CV01855 ERW, 2012 WL 5398671, at \*5 (E.D. Mo. Nov. 2, 2012) (upholding a Missouri conflict of law provision even though the defendants all resided and worked in Oklahoma); *Emerson Elec. Co. v. Rogers*, 418 F.3d 841, 847 (8th Cir. 2005) (addressing why Georgia did not have a materially greater interest than Missouri even though defendant resided and worked in Georgia).

Although this case has some connections to California,

> [t]he very purpose of a choice-of-law provision is to select one body of governing law even though more than one could apply.  It is unsurprising that the selected body of law will often favor one party over the other; that preference is simply part of the exchange of rights and obligations under the agreement.

*St. Jude Med. S.C., Inc. v. Biosense Webster, Inc.*, 818 F.3d 785, 788 (8th Cir. 2016).  As the Court finds that California does not have a materially greater interest in this case compared to Missouri, it is not necessary to address whether applying Missouri law in this case is contrary to California public policy "favoring job mobility and open competition."  (Doc. #243, p. 115.)

Therefore, as laid out above, the Court finds the Missouri choice-of-law provision valid and enforceable.  As such, the Court GRANTS partial summary judgment in favor of Lockton on Count V of Lockton's Amended Complaint and declares that the Missouri choice-of-law provision is valid and enforceable.

### b.  Whether the restrictive covenants are enforceable.

Lockton also requests the Court enter summary judgment in its favor declaring that the "non-solicitation and non-servicing covenants are enforceable under Missouri law."  (Doc. #226,

17

p. 31.)  Giblin argues that summary judgment should be denied because the provisions are

"patently unreasonable."  (Doc. #243, p. 124.)

Section 5.4 of the Member Agreements provide:

While Member is a Producer Member of the Series and for a period of two (2) years[13] following the sale of Member's Producer Unit (which occurs on the Buy-Sell Purchase Date):

(a) Member shall not, directly or indirectly, for himself or on behalf of any other Person, solicit . . . any of the Customer Accounts . . ., if any such Customer Account qualified as a Customer Account within the six (6) month period immediately preceding the sale of the Member's Producer Unit[.] . . The Customer Accounts to which this restriction applies are:

(1) any of the Customer Accounts of the Series (A) produced by Member; (B) solicited by Member (in the case of prospective Customer Accounts), (C) serviced by Member, (D) for or about which Member acquired or had access to Confidential Information, or (E) with which Member has or had business contact; and,
(2) any of the other Customer Accounts of the Series; and,
(3) any of the Customer Accounts of the Other Series (A) produced by Member; (B) solicited by Member (in the case of prospective Customer Accounts), (C) serviced by Member, (D) for or about which Member acquired or had access to Confidential Information, or (E) with which Member has or had business contact; and,
(4) any of the other Customer Accounts of the Other Series; and,
(5) any of the Customer Accounts of any Affiliate (A) produced by Member; (B) solicited by Member (in the case of prospective Customer Accounts), (C) serviced by Member, (D) for or about which Member acquired or had access to Confidential Information, or (E) with which Member has or had business contact.

(Doc. #218-3, pp. 9-10.)

---

[13] When Giblin became a Producer Partner in 2017, she agreed to extend the duration of the restrictive covenants to four years. *See* (Doc. #218-6, pp. 3-4) (the Producer Partner Agreement extending the restrictive covenant to four years but otherwise incorporating the language of Sections 5.3 and 5.4 of the Member Agreements). *See* below for discussion regarding the duration of the restrictive covenants.

18

"In Missouri there are two primary considerations governing the enforceability of covenants not to compete: the parties' agreement must protect well recognized employer interests, and the terms must be reasonable in geographic and temporal scope." *Emerson Elec. Co.*, 418 F.3d at 844. "The question of reasonableness of a restraint requires a thorough consideration of surrounding circumstances, including the subject matter of the contract, the purpose to be served, the situation of the parties, the extent of the restraint, and the specialization of the business." *Id.* at 846 (quoting *House of Tools and Eng'g, Inc. v. Price*, 504 S.W.2d 157, 159 (Mo. Ct. App. 1973)).

To start, the Court finds that Lockton has a recognized interest in its Customer Accounts. "An employer has a legitimate interest in customer contacts to the extent it seeks to protect against the influence an employee acquires over [her] employer's customers through personal contact." *Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 842 (Mo. 2012). Contrary to Giblin's assertion that "Lockton has no legitimate business interest in the goodwill Giblin generated with her clients[,]" the Court agrees with Lockton that it has "a legitimate interest in protecting client relationships that individuals build under the company's roof." (Doc. #243, p. 130; Doc. #257, p. 37.) Giblin spent over fifteen-years at Lockton building a successful book of business for not only herself, but ultimately for Lockton's benefit. Therefore, Lockton has a legitimate interest in maintaining those client relationships and preventing Giblin from "mak[ing] use of contacts with customers to [Lockton's] disadvantage." *Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71, 75 (Mo. 1985).

The Cout also finds that the covenants are reasonable in scope. First, while the Agreements do not limit the restriction geographically, Missouri "courts have enforced customer non-solicitation clauses without a geographic limitation when other limitations to the prohibited

19

conduct exist or when the employee had significant contact with a substantial number of the employer's customers." *Whelan Sec. Co.*, 379 S.W.3d at 842. Here, Lockton contends that "a total of 49 Customer Accounts fall within the Member Agreements' definition of Customer Accounts to which the non-solicitation and non-servicing covenants apply." (Doc. #226, p. 21.)

> According to Lockton
>
> [that] list was generated by gathering the complete list of Customer Accounts which Giblin was credited as a producer or joint venture partner during her tenure at Lockton. That list was then narrowed to the Customer Accounts that Giblin personally had produced, serviced, acquired or had access to Confidential Information about, had business contact with, or (in the case of prospective Customer Accounts) solicited within the six months preceding the termination of Giblin's membership interest in each of the Lockton plaintiffs and the sale of Giblin's Producer Unit on December 29, 2022.

(Doc. #226-1, p. 3) (containing the list of 49 Customer Accounts).

Giblin argues that "Lockton is trying to escape an adverse ruling by claiming that it only seeks to partially enforce the overly broad covenants in such a way that they would only apply to 49 clients . . . [but] the plain language of the covenants covers Lockton's entire worldwide clientele." (Doc. #243, p. 126.) While the Court agrees with Giblin that as written the covenants are unreasonably broad and appear to cover all Lockton Customer Accounts, "courts still can give effect to [the covenants'] purpose by refusing to give effect to the unreasonable terms or modifying the terms of the contract to be reasonable." *Whelan Sec. Co.*, 379 S.W.3d at 844. Accordingly, the provisions that extend the restrictive covenants beyond "only the [forty-nine] customers with whom Giblin dealt" are deemed invalid.[14] (Doc. #257, p. 34.) However, the

---

[14] The stricken provisions include subsections 5.4(a)(2) and 5.4(a)(4); *see also* (Doc. #218-14) (a January 2024 letter from Lockton Associate General Counsel to Giblin's attorney waiving enforcement of subsections 5.4(a)(2) and 5.4(a)(4) of the Agreements); *Star Dev. Corp. v. Urgent Care Assocs., Inc.*, 429 S.W.3d 487, 494 (Mo. Ct. App. 2014) ("A waiver is an intentional relinquishment of a known right.").

Court finds that the modified restrictive covenants covering only the forty-nine Customer Accounts that Giblin personally worked on are reasonable.

As modified, the restrictive covenants are reasonably tailored temporally. While the Member Agreements have a default duration of two years, Giblin's Producer Partner Agreement extended that duration to four years. Lockton argues that "[t]he extended duration of these covenants reflects the significant benefits that being a partner provides[]" such as "her rights to shares in global income, long-term growth in Partner Unit value and tax benefits." (Doc. #226, p. 36.) The Court agrees with Lockton that the four-year duration is reasonable under the circumstances.[15]

Missouri caselaw has upheld or modified restrictive covenants that last up to five years. *See*, *e.g. Superior Gearbox Co. v. Edwards*, 869 S.W.2d 239, 248 (Mo. Ct. App. 1993) (modifying a ten-year restrictive covenant to five years); *Long v. Huffman*, 557 S.W.2d 911, 915 (Mo. Ct. App. 1977) (upholding five-year restrictive covenant that limited defendant from practicing medicine within sixty miles of prior medical office); *see also Matter of Hallahan*, 936 F.2d 1496, 1500 (7th Cir. 1991) (the Seventh Circuit, applying Missouri law, upholding a four-year restrictive covenant). Giblin cites no Missouri caselaw suggesting that the four-year limitation is unreasonable. Further, given that the restrictive covenants pertain only to a select number of Giblin's former Customer Accounts, the Court finds the four-year duration even more reasonable in scope.

As laid out above, the Court finds the restrictive covenants valid and enforceable only to the extent of the forty-nine Customer Accounts that Lockton has identified. Therefore, the Court

---

[15] The parties did not make it clear to the Court whether all forty-nine accounts under the restrictive covenants are subject to the four-year limitation or some are still subject to the two-year limitation. Given the Court finds the four-year limitation reasonable, it likewise finds the much shorter two-year limitation reasonable.

21

GRANTS IN PART Lockton's request for summary judgment on Count V seeking a declaration that the restrictive covenants are valid and enforceable.

## IV. CONCLUSION

Accordingly, Giblin's Motion for Partial Summary Judgment (Doc. #207) is GRANTED IN PART and DENIED IN PART. It is GRANTED as to Count I to the extent that a) Giblin breached Lockton's asserted agreements by soliciting Lockton members and employers to leave Lockton, and that b) Giblin has breached Lockton's asserted agreements by soliciting, servicing, or accepting business from Lockton customer accounts. Further, it is GRANTED as to Count II. However, Giblin's Motion is DENIED as to Count III.

Lockton's Motion for Partial Summary Judgment on Claims for Declaratory Relief (Doc. #214) is GRANTED.

Lockton's Motion for Partial Summary Judgment on Claims of Breach of Contract and Fiduciary Duty (Doc. #216) is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED as to Count I to the extent that Giblin breached her contracts by filing suit in California in violation of the Missouri forum-selection clause. The Motion is DENIED as to Count I to the extent that Giblin breached her obligations by failing to provide thirty-days' notice. The Motion is also DENIED as to Count III.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: May 6, 2024

22